RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

CURTIS JEROME BYRD,

*Petitioner-Appellant*,

No. 18-2021

*v.*

GREG SKIPPER, Warden,

*Respondent-Appellee*.

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-13528—Laurie J. Michelson, District Judge.

Argued: May 1, 2019

Decided and Filed: October 8, 2019

Before: DAUGHTREY, COOK, and GRIFFIN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Elizabeth L. Jacobs, Detroit, Michigan, for Appellant. Ann M. Sherman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Elizabeth L. Jacobs, Detroit, Michigan, for Appellant. Ann M. Sherman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

DAUGHTREY, J., delivered the opinion of the court in which COOK, J., joined. GRIFFIN, J. (pp. 16–29), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Petitioner Curtis Byrd seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Byrd is serving life in prison without the possibility of parole for aiding and abetting a first-degree felony murder, despite the fact that the prosecutor in his case was interested in—and, indeed, would have preferred—negotiating an agreement that could have allowed Byrd to plead guilty to a lesser charge and receive a lighter sentence.  Byrd argues that his counsel's ineffectiveness deprived him of the opportunity to secure a plea deal.  Specifically, he alleges that, based on an egregious misunderstanding of the law, his attorney conveyed to the prosecutor an unwillingness to consider a plea and conveyed to Byrd an assurance of acquittal—effectively halting plea negotiations before they could begin.

We find that Byrd's counsel was deficient and that it is reasonably probable that, absent this incompetency, Byrd would have negotiated a more favorable outcome.  Accordingly, we conclude that Byrd was denied his Sixth Amendment right to effective counsel, reverse the judgment of the district court, and remand the case for entry of a writ of habeas corpus unless new state proceedings consistent with this opinion are reopened within 180 days of the issuance of our mandate in this matter.

**FACTUAL AND PROCEDURAL BACKGROUND**

In February 2010, Byrd and his then-girlfriend, Charletta Atkinson, attempted to rob Richard Joiner at a bank ATM.  Byrd, who had no criminal record to that point, suggested the plan and provided the gun, but at the last minute had a change of heart.  He told Atkinson, "I can't do this. This is not for me, I'm not going to do it."  The record is unclear as to whether Atkinson took the gun or Byrd gave her the gun.  It is clear, however, that, while armed, Atkinson approached Joiner and demanded that he hand over his money.  Joiner resisted and, in a struggle with Atkinson, the gun went off.  Joiner suffered a fatal wound to the head.  Atkinson returned to the car and Byrd drove away.  Later, the couple drove by the scene, saw that

paramedics and police had arrived, and drove off.  Shortly thereafter, Byrd turned himself in to the police.

Byrd and Atkinson were charged with first-degree premediated murder, first-degree felony murder, assault with intent to rob while armed, and possession of a firearm while committing a felony.[1]  Byrd was charged on a theory of aiding and abetting.  Because Michigan law provides that an aider and abettor is subject to the same penalties as the principal, Byrd faced a mandatory sentence of life without parole.[2]

Atkinson, the principal defendant, negotiated a plea agreement with the prosecution, allowing her to plead guilty to charges of second-degree murder and felony firearm.  She received a sentence of 30 to 50 years in exchange for providing testimony in Byrd's trial.  This outcome comports with the Wayne County prosecutor's demonstrated record of preferring plea deals over trials.[3]  As David Braxton, the prosecutor in Byrd and Atkinson's cases, explained in an evidentiary hearing in the district court, Wayne County prosecutors have a practice of waiting for defense counsel to request an offer before beginning negotiations.  After a request is made, the prosecutor will develop a proposal and consult with the interested parties.  Braxton testified that once a principal defendant has pleaded guilty, prosecutors have even more incentive to reach plea agreements with aiders and abettors.  He also explained that, in his experience, Wayne County judges rarely reject plea agreements.  Nevertheless, Byrd was denied the opportunity to

---

[1]Those charges are covered, respectively, by Michigan Compiled Laws §§ 750.316(1)(a), 750.316(1)(b), 750.89, and 750.227b.

[2]Mich. Comp. Laws § 767.39.

[3]This also reflects the national trend in both state and federal court.  As of 2005, an estimated 90 to 95 percent of cases ended in plea deals rather than proceeding to trial.  *See* Lindsey Devers, Bureau of Justice Assistance, Dep't of Justice, Plea and Charge Bargaining 1 (2011), https://www.bja.gov/Publications/PleaBargainingResearch Summary.pdf (last visited July 26, 2019).  *See also* Dep't of Justice, Bureau of Justice Statistics, State Court Sentencing for Convicted Felons tbl.4.1 (2004), https://www.bjs.gov/content/pub/html/scscf04/tables/scs04401tab.cfm (last visited July 26, 2019) (showing 95 percent of state felony convictions resolve through guilty pleas).  Data published in 2009 by the Department of Justice's Bureau of Justice Statistics further corroborated this trend.  *See* Dep't of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online tbl. 5.22.2009 (2009), https://www.albany.edu/sourcebook/pdf/t5222009.pdf (last visited July 26, 2019).  That data, as the Supreme Court noted in its decisions in *Missouri v. Frye*, 566 U.S. 134, 143 (2012), and *Lafler v. Cooper*, 566 U.S. 156, 170 (2012), showed plea deals accounted for 97 percent of convictions in federal courts and 94 percent in state courts.

accept a lesser charge and more lenient sentence because his trial counsel, Marvin Barnett, never initiated plea negotiations with the prosecutor's office.

From the outset, Byrd's counsel was determined to go trial. According to Byrd, Barnett met with him for approximately 30 minutes before Byrd's preliminary hearing and for another 30 minutes the night before trial began. Byrd and Barnett also spoke on the phone once in between these meetings, at which point Barnett told Byrd about Atkinson's plea agreement. These brief conversations comprise the entirety of Barnett's time in preparation with Byrd in advance of trial. Byrd testified that, throughout their brief interactions, Barnett insisted that they were going to trial, assured Byrd that he would "hit a home run" for him by securing an acquittal, and that Byrd would be "going home" instead of going to prison. Byrd also asserts that during their meetings, Barnett did not review the sentencing guidelines with him and did not explain aiding and abetting or other legal concepts underlying Byrd's case. Barnett baldly denied these allegations but also testified that he did not remember his conversations with Byrd "precisely" or "particularly." In much of his testimony, Barnett discussed his usual practices as a defense attorney, but he did not confirm whether he engaged in any specific ones in representing Byrd.[4]

Despite Barnett's assurances of acquittal, Byrd specifically asked Barnett about the possibility of pleading guilty. Barnett convinced Byrd that a guilty plea was unnecessary and against his interest. In the district court, Barnett testified that he did not seek a plea deal on Byrd's behalf because Byrd asserted his innocence and "wanted to go home." Further, Barnett apparently thought that Byrd was not guilty as a matter of law solely due to Byrd's supposed "abandonment" of the crime.

Barnett's reliance on the abandonment defense reflects his confusion about—and possibly his abject ignorance of—the law. Michigan requires a defendant claiming abandonment as an affirmative defense to establish "by a preponderance of the evidence voluntary and

---

[4]Barnett has since been disbarred from the practice of law for conduct unrelated to his representation of Byrd. State of Michigan Attorney Discipline Board, Notice of Disbarment, Case No. 16-118-GA (Jan. 3, 2019), http://www.adbmich.org/coveo/notices/2019-01-03-16n-118.pdf. He has been accused of a number of ethics violations related to his representation of multiple defendants. The Michigan Supreme Court has twice held that he is not a credible witness. *People v. Terrell*, 837 N.W.2d 277 (Mich. 2013); *People v. Hunter*, 829 N.W.2d 871 (Mich. 2013).

complete abandonment of a criminal purpose." *People v. Akins*, 675 N.W.2d 863, 873 (Mich. Ct. App. 2003). In *Akins*, the Michigan Court of Appeals ruled that, despite the defendant's protestation that he changed his mind about a robbery, his abandonment defense failed because, among other things, he "gave his gun to [the principal], knowing that it would be used to commit the robbery." *Id.* This act, in the eyes of the *Akins* court, showed that the defendant intended to aid the commission of the crime and that a jury could reasonably find him guilty of felony murder. *Id.*

Despite this prior case law, which virtually mirrored the facts in Byrd's case, Barnett continued to rely on and vastly overestimate the strength of the abandonment defense. At the preliminary hearing, he moved for dismissal of the charges, describing the case to the trial judge as "real simple" and "straightforward," *i.e.*, a clear case of abandonment. Post-trial in the district court, Barnett once again displayed confusion about the case when he asserted his continued belief that abandonment was "an excellent defense" for his client. He went so far as to say that he believed "that Mr. Byrd should have been found not guilty."

The trial transcript demonstrates that the defense Barnett crafted for Byrd was further hindered by Barnett's misunderstanding of accomplice liability. For instance, in closing, Barnett told the jury:

> "[I]t don't matter how [Atkinson] got the gun . . . . He's into this 'gave her the gun,' [she] took the gun. She grabbed the gun. He took the gun. It don't matter. If he gave her the gun and knew that she was going to commit the offense, he's not guilty. Did you hear me? He doesn't have to stop her . . . . If he gave her the gun and knew that she was going to rob somebody, he'd be not guilty unless he intended to help her, and he didn't know cause the girl got out of the car."

As a legal proposition, this theory is flatly wrong. Michigan law does not require an aider or abettor to intend the commission of the crime. A defendant need only have knowledge of the principal's intent. *See* Michigan Compiled Laws § 767.39; Michigan Model Criminal Jury Instruction 8.1(3)(c) ("[A]t the time the defendant must . . . have known that the other person intended [the crime's] commission . . . ."). Moreover, Byrd's felony-murder charge meant that the prosecutor in Byrd's case needed to establish only that Byrd knew of Atkinson's intention to rob the victim; not that she intended to kill him. *See* Michigan Compiled Laws § 750.316(1)(b);

Michigan Model Criminal Jury Instruction 16.4(3). As long as Byrd was aware of Atkinson's plans, his actions in support of those plans need not have been considerable because "[t]he amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime." *People v. Palmer*, 220 N.W.2d 393, 378 (Mich. 1974). Thus, a decidedly low evidentiary threshold stood between Byrd and conviction for aiding and abetting felony murder.

Not surprisingly, the abandonment defense failed at trial. Byrd was convicted of first-degree felony murder, assault with intent to rob, and felony firearm, and he was sentenced to life imprisonment without the possibility of parole.[5] Michigan courts denied Byrd's direct appeal of his conviction and rejected his motion for post-conviction relief. He then made his way to federal court seeking a writ of habeas corpus.

The district court dismissed all of Byrd's claims except one: ineffective assistance based on Barnett's alleged misunderstanding of the law and resultant failure of representation at the pleading stage. Following an evidentiary hearing, the district determined that, although Byrd's petition "allowed for the possibility that Barnett performed deficiently," Byrd did not make a sufficient showing of prejudice because it was not clear that Byrd would have accepted a plea. *Byrd v. Bauman*, No. 15-13528, 2018 WL 4005549, at *5 (E.D. Mich. Aug. 22, 2018). The court denied Byrd a writ but granted a certificate of appealability.[6]

## DISCUSSION

When we consider a denial of habeas corpus relief under 28 U.S.C. § 2254, "we review the district court's legal conclusion's de novo and its factual findings for clear error." *Magana v. Hofbauer*, 263 F.3d 542, 546 (6th Cir. 2001). The Antiterrorism and Effective Death Penalty

---

[5]Byrd's sentence also included 15 to 30 years for the assault conviction and an additional two years for the firearm conviction. The trial court granted Byrd's motion for a directed verdict as to the first-degree premeditated murder charge against him.

[6]In the district court, the warden argued that Byrd procedurally defaulted his ineffective-assistance claim. In his briefing on appeal, Byrd asserts as cause that his appellate counsel was also ineffective. We need not consider this claim because the warden has abandoned the procedural default affirmative defense. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Moreover, the defense would fail for reasons outlined in the district court's opinion. *Bauman*, 2018 WL 4005549, at *4.

Act of 1996 (AEDPA) governs habeas corpus petitions filed after the act's effective date, as was Byrd's. Pub. L. No. 104-132, 110 Stat. 1214 (1996). "However, the stringent requirements of § 2254(d) apply only to claims that were 'adjudicated on the merits in State court proceedings.'" *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (quoting *Cullen v. Pinholster*, 563 U.S. 170, [186] (2011)). The parties agree that no state court has adjudicated the merits of Byrd's ineffective-assistance claim. Thus, we consider the claim *de novo*. *See id.*

The familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), controls ineffective-assistance claims. To satisfy *Strickland*, a petitioner must establish "that counsel's representation fell below an objective standard of reasonableness" and that counsel's incompetence prejudiced him. *Id*. at 687–88. To establish prejudice, "a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694).

Based on an overly constrained reading of *Lafler*, the dissent posits that we should not reach the merits of Byrd's ineffective-assistance claim because, in our colleague's view, it "falls outside the scope of the Sixth Amendment." But the Sixth Amendment's requirement that defendants receive "the effective assistance of competent counsel" extends to all critical stages of a criminal proceeding, *Lafler*, 566 U.S. at 163, including pretrial plea negotiation. *See Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[W]e have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."). *See also Chaidez v. United States*, 568 U.S. 342, 349 (2013) (explaining that "the *Strickland* standard extends generally to the plea process."); *Lafler*, 566 U.S. at 162; *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985). The Supreme Court has never cabined that right to negotiations that take place only after an offer has been made.

Nevertheless, the dissent urges that we should ignore Byrd's allegations of his counsel's ineffectiveness because if the prosecution exercised its discretion not to offer a plea to Byrd, "there is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). This suggests a threshold requirement that, put simply, has no place in this matter, because the ineffectiveness of Byrd's counsel foreclosed the possibility that the prosecution,

under the unique facts of this case, could exercise such discretion.  Whether a constitutional right to plea bargaining exists thus simply is not relevant here.  Indeed, as we explained recently, "in the context of the right to effective assistance of counsel, . . . the absence of a right to be offered a plea or to have it accepted . . . is *beside the point*."  *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018) (emphasis added).

In *Rodriguez-Penton*, we determined that a defendant could establish *Strickland* prejudice when his counsel failed to alert him that accepting a plea offer could subject him to deportation, even if the prosecutor never offered a plea that excluded "adverse immigration consequences." *Id.* at 488.  We held that the defendant could do so by establishing that he would have negotiated a more favorable plea deal and that "with proper advice, the outcome of those negotiations would have been different."  *Id.* at 490.  The mere potentiality of Rodriguez-Penton's negotiation of a more favorable plea did not prevent us from determining that he could succeed on his ineffective-assistance claim, much less prevent us from considering the claim.  *Id.* at 488–89.[7]

In reaching our conclusion, we looked, first, to the Supreme Court's rulings in *Lafler* and in *Missouri v. Frye*, 566 U.S. 140 (2012).  *Id.* at 487–88.  We recognized that those cases—contrary to the dissent's contention—do not establish a threshold requirement of a more favorable plea offer.  Rather, they acknowledged the extensive system of pleas that now dominates our criminal justice process and affirmed a defendant's right to effective counsel in these "crucial" negotiations.  *Id.*  True, *Lafler* and *Frye* noted that, despite the prevalence of plea bargaining, there is no constitutional right to the prosecutor's maintenance of a plea offer or a judge's acceptance of a plea offer.  *See Lafler*, 566 U.S. at 168; *Frye*, 566 U.S. at 148–49.  Thus, in light of the absence of such rights, the Supreme Court clarified that when counsel's deficient performance deprives a defendant of a fair opportunity in plea negotiations, he must make additional showings to meet the *Strickland* test.  *Frye*, 566 U.S. at 148–49.  Namely, a defendant must demonstrate a reasonable probability that, absent counsel's errors, the prosecutor would not

---

[7]The dissent offers a different interpretation of *Rodriguez-Penton*, pointing to our acknowledgement that "if the Government exercises its discretion not to bargain for a guilty plea, no constitutional question is presented." *Rodriguez-Penton*, 905 F.3d at 489.  But this language plainly did not establish the threshold requirement for which the dissent advocates.  *Rodriguez-Penton* merely recognized that prosecutors have broad discretion and that any number of factors could lead a prosecutor to decline to reach a plea agreement.  *See infra.*

have rescinded a plea offer and a judge would not have rejected it.  *Id.*; *see also Lafler*, 566 U.S. at 168; *Rodriguez-Penton*, 905 F.3d at 487–88.

We then turned to whether a defendant could establish prejudice based on the assertion that "he *would have* negotiated a plea deal" that did not leave him threatened with deportation. *Rodriguez-Penton*, 905 F.3d at 488 (emphasis added).  We looked to rulings from our sister circuits for guidance and found that he could.  *Id.*  For example, we approved of the Ninth Circuit's logic in *United States v. Rodriguez-Vega*, which held that a petitioner can establish prejudice by showing "a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable defense."  797 F.3d 781, 788 (9th Cir. 2015).  Likewise, we cited a decision from the Seventh Circuit that found prejudice because a defendant "*could have tried* to negotiate a different plea deal," notwithstanding the fact that the prosecutor in that case never offered a more favorable plea.  *DeBartolo v. United States*, 790 F.3d 775, 779 (7th Cir. 2015) (emphasis supplied).  In these cases, the courts found that the petitioner satisfied *Strickland* by establishing a reasonable probability that, absent counsel's errors, the defendant would have bargained for a better plea.  *See also Gabay v. Woodford*, 418 F. App'x 649, 651 (9th Cir. 2011) (suggesting defendant could have established prejudice based on counsel's failure to engage in plea negotiations if he had shown that government was willing to offer a plea deal).

This line of reasoning is easily applicable to Byrd's case: because there is no right to a plea offer, where a petitioner alleges ineffective assistance of counsel prevented plea negotiations, demonstrating prejudice requires that he establish a reasonable probability that but for counsel's errors, the petitioner would have received a plea offer.  *See Lafler*, 566 U.S. at 163–64 (establishing the requirement of a "reasonable probability" showing for potential pleas); *Frye*, 566 U.S. at 148–49 (same).  Finally, as explained in *Lafler* and *Frye*, a petitioner must also show that he would have accepted the offer, the prosecution would not have rescinded the offer, and that the trial court would not have rejected the plea agreement.  *See Lafler*, 566 U.S. at 168; *Frye*, 566 U.S. at 148–49; *see also Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) (explaining that, to establish prejudice where no plea was offered, petitioner "had to show—at minimum—that the prosecutor would have actually offered him a deal had his attorney been

competent."); *cf. Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014) (holding that petitioner could not establish prejudice because he failed to "show[] that a reasonable probability existed that the government would have extended a plea offer" or to establish his willingness to cooperate).[8]

A petitioner raising this variety of *Strickland* claim thus faces a formidable standard, but we are convinced that Byrd has met it. With regard to *Strickland*'s deficiency prong, the record shows Barnett's blatant incompetence. His errors were apparent and abundant, and without doubt, his representation fell far outside "prevailing professional norms." *Strickland*, 466 U.S. at 688.

First, Barnett manifested a shocking lack of comprehension regarding the pertinent law in Byrd's case. This ignorance, coupled with the inaccurate advice he gave his client about the likelihood of his acquittal, is sufficient to deem Barnett's performance constitutionally inadequate. *See Padilla*, 559 U.S. at 369 (noting an attorney's duty to give correct advice when the law is clear); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (holding that "patently erroneous" advice falls below an objectively reasonable standard of assistance); *Magana*, 263 F.3d at 550 (6th Cir. 2001) ("[Counsel's] complete ignorance of the relevant law under which his client was charged, and his consequent gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms."); *Blackburn v. Foltz*, 828 F.2d 1177, 1182 (6th Cir. 1987) (holding that counsel's assistance was deficient where he displayed "a startling ignorance of the law").

---

[8]The dissent presents a long string of cases in support of its "threshold question" theory. Many are inapposite here because they consider legal claims and factual scenarios wholly dissimilar from the case at hand. *See, e.g., United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990) (considering whether prosecutor engaged in prosecutorial vindictiveness); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir. 1984) (considering due process claims related to alleged prosecutorial vindictiveness). Those that do grapple with similar legal issues are distinguishable for a variety of reasons, but, at bottom, only serve to reinforce our assurance that the absence of a right to plea bargain does not create a bar to a *Strickland* claim. In each, the courts conducted a *Strickland* analysis notwithstanding their recognition that no right to plead exists. *See, e.g., Osley v. United States*, 751 F.3d 1214, 1225 (11th Cir. 2014); *Sutton v. State*, 759 S.E.2d 846, 852 (Ga. 2014); *People v. French*, No. 308774, 2014 WL 132443, at *5 (Mich. Ct. App. Jan. 14, 2014) (*per curiam*).

Second, Barnett erred by failing to "provide[] [Byrd] with competent and fully informed advice, including an analysis of the risks that [he] would face in proceeding to trial." *Burt v. Titlow*, 571 U.S. 12, 25 (2013) (Sotomayor, J., concurring). As we previously explained in *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003):

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.

The record demonstrates that Barnett did none of this for Byrd. "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis." *Hill*, 474 U.S. at 62 (White, J., concurring); *see also Lee v. United States* 137 S. Ct. 1958, 1966 (2017) (finding deficient an attorney's performance when he failed to inform his client that a plea deal could render the defendant deportable).

Having determined that Byrd has satisfied *Strickland*'s first prong, we turn to the question of prejudice. *Strickland*, 466 U.S. at 687. As we have already noted, in the context of plea negotiations, to demonstrate prejudice, a petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the outcome of the plea process would have been different. *Hill*, 474 U.S. at 57. In this case, the prosecutor testified unequivocally about the state's willingness to extend a plea offer to Byrd. Byrd also has demonstrated, by pointing to the bargain Atkinson reached as a comparator, that an available plea would have provided favorable terms and would have been approved by the trial court. Our decision in *Rodriguez-Penton* approved the use such evidentiary demonstrations to establish prejudice. 905 F.3d at 488. The warden is wise, then, not to contest the availability of a plea or the court's probable acceptance of a deal.

The warden instead argues that Byrd has not established a reasonable probability that he would have accepted a plea deal had it been offered. As support, the warden points to Byrd's professions of his innocence, to Byrd's desire to be acquitted, and to Byrd's inconsistent testimony as to when he asked Barnett about the possibility of a plea. The district court also

placed significant weight on these facts, finding that they proved that Byrd did not want to plead guilty.

We are bound to accept this finding regarding Byrd's desire (or lack thereof) to plead guilty because "[t]he role of the appellate court on habeas review is not to speculate but to defer to the District Court's factual findings unless . . . they are clearly erroneous." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quotations and citation omitted). But that does not end our review. Byrd's interest in proceeding to trial was rooted in misinformation gleaned from his counsel's faulty advice, making it an unreliable metric of reasonably probable outcomes. As we have already discussed, Barnett's advice to Byrd was erroneous and omitted critical details about Byrd's case. Thus, Byrd lacked the requisite information to weigh the options in front of him, and whatever desire he exhibited before trial is not dispositive of what he would have done if he were properly educated about the charges against him. At the evidentiary hearing, Byrd stated that he would have accepted any plea for less than life without the possibility of parole. Hindsight is, of course, 20/20. Thus, when considering a defendant's *post hoc* assertions, we should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967. Byrd's recent testimony is supported by the fact that he specifically asked Barnett about the possibility of pleading. Barnett convinced him to stay the course, promising that the abandonment defense would result in a "home run." Byrd's prior "choice" to forgo a plea was no choice at all, being grounded on faulty counsel and therefore immaterial.

We are similarly unpersuaded by the warden's focus on Byrd's desire for acquittal. It is unsurprising that a defendant would express his wish to avoid prison and return to his home. It is, in fact, entirely logical that a defendant would have hope for acquittal, especially if that defendant was never made aware of the nuanced contours of the charges against him and the law governing his case. But hoping for an acquittal and being willing to accept *only* an acquittal are two very different things. If Byrd were unwilling to accept a plea, he would not have inquired about the potential of pleading guilty—but he did make such an inquiry. Furthermore, given his wish to go home, it seems quite reasonable that when faced with a probable life sentence without the possibility of parole, Byrd would have jumped at a negotiated plea to a lesser offense. After all, going home *eventually* is far preferable than never going home at all. *See, e.g., Lee* 137 S.

Ct. at 1966–67 ("The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."); *Magana*, 263 F.3d at 552 (noting that a large disparity in potential sentences suggested a reasonable probability of a different outcome because "[i]t does not strain reason to believe" that a defendant would have chosen the lesser sentence if fully informed of his options).

Byrd has presented significant, persuasive evidence demonstrating that (a) a plea offer was available to him; (b) Byrd would have accepted the offer; (c) the prosecution would have not rescinded the offer; and (d) that the trial court would have approved the finalized plea agreement. To establish prejudice, *Strickland* contains still one more requirement: a petitioner must demonstrate that this more favorable outcome would have been likely *but for* counsel's errors. *Strickland*, 466 U.S. at 694. In the plea-negotiation process, this proposition can be especially difficult to establish. During the pretrial, plea-bargaining process, prosecutors have broad discretion and may decide, based on any number of factors, to offer, to forgo, or to rescind a plea deal.

The dissent highlights a number of cases illustrative of this dynamic. For example, a prosecutor may choose not to offer a plea unless a defendant agrees to cooperate. *See, e.g., Ramirez v. United States*, 751 F.3d at 608; *Moss*, 323 F.3d at 474. Or, the prosecution might explicitly refuse to craft a plea deal that meets the defendant's demands. *See, e.g., United States v. Kalu*, 683 F. App'x 667, 668–69 (10th Cir. 2017) (noting that because defendant was uninterested in the sentence attached to potential plea offer and the prosecution refused defendant's counteroffer, counsel was not deficient for failing to secure initial deal); *United States v. Pena*, 233 F.3d 170, 176 (2d Cir. 2000) (holding that defendant did not establish prejudice when prosecutor refused to meet his condition of not initiating deportation proceedings). In these instances, a defendant cannot establish constitutionally ineffective assistance in the plea-bargaining process because factors outside of counsel's errors precluded successful negotiations.

That is not the situation here. Byrd's case is uniquely cut-and-dried. *See United States v. Pender*, 514 F. App'x 359, 361 (4th Cir. 2013) (considering a similar case where the prosecution conceded a beneficial plea agreement would have been available and holding that counsel was

ineffective for unreasonably failing to pursue plea). The prosecutor testified not only about his desire to reach a plea agreement, but also about the reason that no such agreement came to pass. Braxton explained:

> Q: [W]hat made you think Mr. Byrd was not interested in a plea?
> A: During the preliminary examination, Mr. Barnett had indicated to me that, you know, he thought I had not correctly charged.
> Q: So, is it fair to say that any inkling or communication you would have gotten from Mr. Byrd came from Mr. Barnett?
> A: Yes.

He continued on re-direct:

> Q: You indicated that Mr. Byrd did not want to plead guilty or did not want to enter into a plea agreement in response to a question by [state's counsel], is that right?
> A: That –
> Q: Mr. Byrd?
> A: Well, my impression was from his counsel.
> Q: So, Mr. Byrd was not the one –
> A: No.
> Q: -- that you talked to?
> A: No.
> Q: The only person you have ever interacted with has been Mr. Barnett?
> A: That's correct.

These impressions, along with Barnett's inaccurate advice to Byrd—all based on his wholesale misunderstanding of the law—impeded the initiation of plea negotiations and "caused [Byrd] to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." *Lafler*, 566 U.S. at 169. Byrd has sufficiently shown that there is a reasonable probability that, with competent counsel, he would have availed himself of Wayne County's fair and regular pretrial process and would have successfully negotiated a favorable plea. Byrd has therefore established that his counsel's deficiencies prejudiced him. *Strickland*, 466 U.S. at 687. He is entitled to the habeas relief he seeks.

**CONCLUSION**

In this specific habeas action with its unusual combination of factual and procedural circumstances, Byrd's attorney failed his client from the very outset of his case. On the basis of a thoroughly unreasonable misunderstanding of the law, Byrd's counsel advised him incorrectly, dismissed his inquiries about a plea bargain, and single-mindedly pursued a near-impossible chance at acquittal. As a result of this incompetence, Byrd was deprived of the opportunity to negotiate a plea when sworn testimony confirmed the typicality of the prosecutor awaiting defense counsel's showing interest in negotiating pleas and the legitimacy of the expectation that the judges of that court would accept such reasonable pleas. This combination of factors and circumstances exposes a Sixth Amendment violation by Byrd's counsel. For these reasons, we find that Byrd suffered constitutionally ineffective assistance of counsel in the pretrial stage of his proceedings. We thus REVERSE the district court's denial of a writ of habeas corpus and REMAND the case to the district court with instructions to issue a writ of habeas corpus in this matter unless state court proceedings consistent with this opinion are reopened within 180 days of the issuance of this court's mandate.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.

The Supreme Court has made clear that "there is no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), but "*[i]f* a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (emphasis added). That is a big if. And it is an if wholly ignored by my colleagues, who today grant habeas relief, vacate a constitutionally sound jury verdict, and reset petitioner Curtis Byrd's state criminal case back to the pretrial stage all because they conclude Byrd's counsel "would have negotiated a more favorable outcome" during plea negotiations that never occurred. Because the majority's expansion of the Sixth Amendment's right to counsel to now include the right to an unoffered plea deal cannot be reconciled with Supreme Court and Sixth Circuit precedent, I respectfully dissent.

I.

A.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[D]efence," the Supreme Court has held, means "the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citations omitted). The "negotiation of a plea bargain" is one such "critical" stage. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). More specifically, "*[d]uring plea negotiations* defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 566 U.S. at 162 (citation omitted and emphasis added).

These parameters are well defined. A criminal defendant has the right to receive effective assistance of counsel before pleading guilty "upon the advice of counsel," including when doing so pursuant to a negotiated plea agreement. *Hill v. Lockhart*, 474 U.S. 52, 54, 56–57

(1985).  His right to receive effective assistance of counsel also requires that he be informed of "formal offers from the prosecution to accept a plea on terms and conditions that may be favorable." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).[1]  And he is guaranteed competent counsel "in considering whether to accept" an offered plea deal.  *Lafler*, 566 U.S. at 168. "A defendant who rejects or otherwise misses out on a formal plea offer because of deficient performance or erroneous advice can establish ineffective assistance of counsel only if he satisfies the well-known *Strickland* standard." *Johnson v. Genovese*, 924 F.3d 929, 934 (6th Cir. 2019); *see also Hill*, 474 U.S. at 57–58 (holding that *Strickland*'s deficient-performance-and-prejudice standard applies "to ineffective-assistance claims arising out of the pleas process").

But what happens when plea negotiations never begin?  Byrd's prosecutor never offered him a plea deal, formal or otherwise, a jury of his peers convicted Byrd, and he takes no issue now with the constitutionality of his trial.  Instead, he wishes in hindsight that he would have avoided trial, asserting that he followed his attorney's "patently erroneous legal advice" and elected trial over "pursuing a possible guilty plea."  In his view, his counsel should have explored a plea deal for a charge not carrying a mandatory-life-without-the-possibility-of-parole sentence.  Had this happened, he ventures the prosecutor would have offered him a satisfactory plea offer and the trial court would have accepted it.  No matter how possible this parade of speculation may be, the Supreme Court's limited authorization for ineffective-assistance-of-counsel claims arising out of the plea context simply does not apply because Byrd never received a plea offer in the first place.

B.

The Supreme Court's decisions in *Lafler* and *Frye* define the scope of our inquiry.

Both begin with a premise that is nonexistent here—the presence of a formal plea offer that, for whatever reason, was not accepted by the defendant.[2]  The Court then detailed how a

---

[1]*Frye* explicitly cabined this requirement to formal plea offers with a fixed expiration date, leaving open whether it might be different—or not apply at all—in other circumstances.  566 U.S. at 145.

[2]Frye's attorney failed to communicate plea offers to him, they lapsed, he later pleaded guilty without the benefit of a plea agreement, and he received a substantially longer sentence than he likely would have received had he taken the original offers.  *Frye*, 566 U.S. at 138–39.  Lafler's counsel advised him to reject a plea offer, Lafler

petitioner could establish prejudice under *Strickland*—a "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984)—in the plea context. *Frye*, 566 U.S. at 147; *Lafler*, 566 U.S. at 163. Broadly speaking, prejudice means showing that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. More specifically, one must make several "reasonable probability" showings, including that: he would have accepted the earlier-offered plea deal with competent counsel; the prosecution would not have withdrawn or canceled the offer; the court would have accepted the deal; and he would have received a more favorable judgment or sentence. *Lafler*, 566 U.S. at 163–64; *Frye*, 566 U.S. at 147–48.

*Lafler* and *Frye* then critically rely on that premise (the existence of a prior plea offer) to emphasize that the Constitution does not provide a substantive right to a plea bargain.[3] Take *Frye*, where the Court specifically highlighted the "particular importance" of a defendant showing there is "a reasonable probability neither the prosecution nor the trial court would have prevented the [earlier plea] offer from being accepted or implemented." 566 U.S. at 148. Why? "*[B]ecause a defendant has no right to be offered a plea, nor a federal right that the judge accept it.*" *Id.* at 148–49 (citing *Weatherford*, 429 U.S. at 561; *Santobello v. New York*, 404 U.S. 257, 262 (1971)) (emphasis added).[4]

If *Frye* left any room at the margins, *Lafler* filled it in. There, and in no uncertain terms, the Supreme Court made two things clear—its holding depended on a plea being offered *and* the absence of a plea offer from the government is fatal to advancing a plea-related ineffective-assistance-of-counsel claim:

---

followed that advice, went to trial, was convicted, and received a substantially longer sentence than contemplated by the plea offer. *Lafler*, 566 U.S. at 161. The Supreme Court held Frye's attorney performed deficiently, *Frye*, 566 U.S. at 145, and found it unnecessary to "explore" the performance of Lafler's attorney. *Lafler*, 566 U.S. at 163.

[3]Rather, plea bargains have their foundations in contract, not constitutional, law. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts.").

[4]Indeed, Frye conceded this point before the Supreme Court. Brief for Respondent at 18, *Missouri v. Frye*, 566 U.S. 134 (2012) (No. 10-444), 2011 WL 2837937, at *18 ("Frye is not claiming a constitutional right to plea bargain, nor does granting him relief require the Court to establish such a right. Had the prosecutor not offered a plea bargain, the trial court could not have compelled him to do so.").

> *If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.* If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.
>
> It is, of course, true that defendants have "no right to be offered a plea . . . nor a federal right that the judge accept it." In the circumstances here, that is beside the point. *If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise.*

*Lafler*, 566 U.S. at 168 (emphases added and internal citation omitted).

We have embraced this exact dichotomy in a published opinion after *Lafler* and *Frye*. "Of course," we not-so-casually observed in *Rodriguez-Penton v. United States*, "if the Government exercises its discretion not to bargain for a guilty plea, *no constitutional question is presented.* But when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process." 905 F.3d 481, 489 (6th Cir. 2018) (emphasis added). Even our dissenting colleague in that case agreed with this emphasized distinction. *Id.* at 493 (Thapar, J., dissenting) ("Indeed, the key in both *Lafler* and *Frye* was that there was a *previous* (more favorable) plea offer that the defendant rejected based on bad advice.").

Our post-*Lafler*/*Frye* unpublished decisions also agree that the existence of a plea offer is a threshold requirement to an ineffective-assistance claim arising out of the plea process. *See, e.g.*, *Ambrose v. Romanowski*, 621 F. App'x 808, 817 (6th Cir. 2015) ("In order to show defective performance such that ineffective assistance led to the offer's rejection or lapse, Ambrose must start by showing that there was an actual plea offer from the prosecutor."); *Lint v. Prelesnik*, 542 F. App'x 472, 482–83 (6th Cir. 2013) (holding that a state court reasonably concluded the prosecutor never offered a plea, and thus the petitioner could not maintain a claim for ineffective assistance of counsel). And this is consistent with our pre-*Lafler*-and-*Frye* caselaw. *See, e.g.*, *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) ("[I]t is not necessary that the defendant have counsel who recommends that a plea bargain be pursued."); *United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990) (rejecting a claim that a prosecutor failed to engage in "good faith plea bargaining" given the absence of a "constitutional right to plea bargain" (quoting *Weatherford*, 429 U.S. at 561)); *Anderson v. United States*, 229 F.3d

1150, 2000 WL 1256902, at *2 (6th Cir. July 11, 2000) (table op.) ("The alleged denial of an opportunity to plea bargain does not permit collateral relief . . . .").

Our sister circuits similarly require proof of a plea offer. *See, e.g.*, *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) ("Delatorre cannot rely on [*Lafler* and *Frye*], however, because he was never formally offered a plea agreement."); *see also Sanchez v. Pfeiffer*, 745 F. App'x 703, 705–06 (9th Cir. 2018) (denying application for a certificate of appealability on a claim that the defendant would have accepted a certain plea deal in lieu of trial because, among other things, "[a] reasonable jurist could conclude that no offer was made based on [trial counsel]'s (and the State's) clear denial that an offer was ever made and the absence in the trial record of any reference to an offer by the State"); *United States v. Kalu*, 683 F. App'x 667, 669 (10th Cir. 2017) ("Kalu argues that counsel was ineffective for failing to pursue a formal offer after the government discussed the possibility of a 30-37 month sentence. However, a defendant has no right to be offered a formal plea."); *Osley v. United States*, 751 F.3d 1214, 1225 (11th Cir. 2014) ("To the extent Osley avers that the prosecutor would have then offered a new deal amenable to him, and the district court would have accepted it, this claim is wholly speculative."); *Jackson v. United States*, 510 F. App'x 484, 489 (8th Cir. 2013) (per curiam) ("Jackson has conceded on appeal that the government *never* offered him a plea agreement, and he has no right to be offered one."); *cf. Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014) (rejecting argument that counsel failed to advise defendant of government's "interest" in the defendant cooperating, noting the defendant "received at most an informal plea offer" and thus could not "demonstrate that he suffered the requisite prejudice under *Strickland* and *Frye*, especially where [the defendant] has no right to be offered a plea" (internal quotation marks omitted)); *but see United States v. Pender*, 514 F. App'x 359, 360–61 (4th Cir. 2013) (per curiam) (remanding for further factfinding on petitioner's *Lafler/Frye* claim that "his counsel failed to pursue a plea agreement when faced with a very weak case for trial and a mandatory life sentence upon conviction").

And their position was the same before *Lafler* and *Frye*. *See, e.g.*, *United States v. Washington*, 619 F.3d 1252, 1256–57 (10th Cir. 2010) ("[T]he district court's factual finding that the government never made a firm plea offer finds adequate support in the record. Thus, Mr.

Washington cannot make the requisite *Strickland* showing that but for Mr. Long's ineffective assistance, he would have pled guilty."); *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, . . . as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement."); *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("Logic dictates therefore, that to establish such prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government."); *United States v. Craveiro*, 907 F.2d 260, 265 (1st Cir. 1990) ("Likewise, Craveiro's contention that if he had received notice of the ACCA's applicability at the time of his indictment, he might have tried to plea bargain to lesser charges is groundless. There is no constitutional right to plea bargain."); *Johnson v. Cabana*, 818 F.2d 333, 342 (5th Cir. 1987) (per curiam) ("The district court found that Johnson was never offered a plea bargain so prejudice could not have occurred."); *United States v. Palmer*, 809 F.2d 1504, 1508 (11th Cir. 1987) ("The government was under no obligation to enter into any plea bargaining or to accept any deal offered by Palmer."); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir. 1984) ("[There is no] duty on a prosecutor either to plea bargain at all or to keep a plea bargain offer, once made, open. A defendant has no right to engage in plea bargaining in the first place."); *Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980) ("The prosecutor is under no duty to plea bargain if no offer is made, the defendant is entitled to a trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has. The courts cannot compel the prosecutor to offer a plea bargain to eliminate the resulting discrimination between these two types of defendants. There is no rule that dictates that the prosecutor may not simply let a case go to trial."); *but see United States v. Brannon*, 48 F. App'x 51, 53–54 (4th Cir. 2002) (remanding for further factfinding on a claim that defendant's attorney "failed to pursue plea negotiations in a case where guilt was clear").

State appellate courts also follow this rule, again both before and after *Lafler* and *Frye*. *See, e.g.*, *Carpenter v. Comm'r of Corr.*, 157 A.3d 1153, 1161–62 (Conn. App. Ct. 2017) (explaining that *Lafler* and *Frye* apply "when the state has *actually* offered a plea"); *Campbell v. State*, 17 N.E.3d 1021, 1024 (Ind. Ct. App. 2014) ("Although a defendant does not have a constitutional right to receive a plea bargain, if the State does make a promise to a defendant,

. . . any subsequent breach by the State renders the defendant's guilty plea involuntary."); *Sutton v. State*, 759 S.E.2d 846, 852 (Ga. 2014) ("To suggest that counsel should have obtained a deal is pure speculation which is insufficient to satisfy the prejudice prong of *Strickland.*"); *People v. French*, No. 308774, 2014 WL 132443, at *5 (Mich. Ct. App. Jan. 14, 2014) (per curiam) ("Contrary to defendant's argument, there is no law requiring defendant's counsel to generate a favorable plea; only to advise him regarding actual offers."); *Fast Horse v. Weber*, 838 N.W.2d 831, 840–41 (S.D. 2013) (distinguishing *Lafler* and *Frye* and denying relief because both "involved undisputed plea offers from the prosecution to the defendant"); *State v. Long*, 814 N.W.2d 572, 583 (Iowa 2012) ("Since Long had no right to be offered a plea, we do not see how the denial of the opportunity to plea bargain caused Long to suffer undue prejudice in this case."); *Sparks v. State*, 501 S.E.2d 562, 567 (Ga. Ct. App. 1998) ("It follows that defendant's trial counsel did not render ineffective assistance by failing to seek specific performance of a non-existent plea bargain."); *Harris v. State*, 306 S.E.2d 79, 81 (Ga. Ct. App. 1983) ("There is no constitutional right to plea bargain and there is no necessity for a trial court to insure that a defendant who wishes to plead guilty has had the opportunity to plea bargain."); *Commonwealth v. Smith*, 427 N.E.2d 739, 742 (Mass. 1981) ("A defendant has no right to insist that the prosecutor participate in plea bargaining.").

C.

"The threshold issue in this case, of course, is whether the government ever extended a plea offer to" Byrd. *Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004). All sides agree the prosecutor exercised his discretion and chose not "to enter into plea negotiations." *Rodriguez-Penton*, 905 F.3d at 489. He did not consider or offer a plea deal. This absence erects an impassible barrier—*Lafler* and *Frye*'s expansion of the Sixth Amendment right to counsel to plea bargaining does not apply. Simply, "no constitutional question is presented." *Id.*

In cases, where, as here, an attorney's "deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself, . . . [w]e instead consider whether the defendant was prejudiced by the denial of the entire judicial proceeding to which he had a right." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). The default position staked out by the

Supreme Court over forty years ago in *Weatherford* answers this question—"there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty."**5** 429 U.S. at 561. Because Byrd is not entitled to a plea bargain, the lack of an opportunity to negotiate for one is not a "proceeding" guaranteed to him, and he therefore is not entitled to habeas relief.

Now-Justice Gorsuch agrees. It is a "novel reading" of *Lafler* and *Frye* to say "trial counsel was deficient by failing to request a favorable guilty plea" without a plea offer on the table. *United States v. Rendon-Martinez*, 497 F. App'x 848, 849 (10th Cir. 2012) (Gorsuch, J.). Put differently, a claim that if "counsel performed adequately, [I] would have received a plea offer" fails absent an "alleg[ation] that the government ever made a plea offer, or even that a plea offer was on the way." *United States v. Garton*, 501 F. App'x 838, 839–40 (10th Cir. 2012) (Gorsuch, J.). Indeed, because *Rendon-Martinez* and *Garton* involved applications for certificates of appealability under 28 U.S.C. § 2253(c)(2), then-Judge Gorsuch's decisions for the Tenth Circuit joined the Ninth Circuit and concluded no "reasonable jurists could debate" this point of law. *Rendon-Martinez*, 497 F. App'x at 849; *Garton*, 501 F. App'x at 839–40; *see Sanchez*, 745 F. App'x at 705–06; *cf. Burt v. Titlow*, 571 U.S. 12, 27 (2013) (Ginsburg, J., concurring) ("[T]he prosecutor could not be ordered to 'renew' a plea proposal never offered in the first place."); *Williams v. Jones*, 583 F.3d 1254, 1259–60 (10th Cir. 2009) (Gorsuch, J., dissenting from the denial of rehearing en banc) ("No principle of justice rooted in our constitutional order entitles a defendant to receive, accept, or enforce a plea offer. Very much to the contrary, the Supreme Court has explained (repeatedly) that a plea offer is a matter of executive grace . . . and so affords the defendant no enforceable rights unless and until the plea is embodied in the judgment of a court.").

---

**5**And even if there is a plea bargain, it, "standing alone[,] is without constitutional significance; . . . until embodied in the judgment of a court [it] does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984), *abrogated on other grounds by Puckett*, 556 U.S. at 138 n.1. This is because "[t]here is, of course, no absolute right to have a guilty plea accepted [and a] court may reject a plea in exercise of sound judicial discretion." *Santobello*, 404 U.S. at 262 (citation omitted); *see also United States v. Ball*, 805 F.2d 1036, No. 85-5863, 1986 WL 18119, at *2 (6th Cir. Oct. 21, 1986) (table op.); *People v. Wright*, 298 N.W.2d 857, 866 (Mich. Ct. App. 1980).

Because "there was no plea offer made here, and there's no right to a plea offer," *Rendon-Martinez*, 497 F. App'x at 849, Byrd cannot show the State of Michigan deprived him of "a substantive or procedural right to which the law entitles him" and therefore cannot satisfy *Strickland*'s prejudice standard. *Williams v. Taylor*, 529 U.S. 362, 393 (2000).

D.

Not only is this approach consistent with Supreme Court precedent, our circuit law, and the weight of authority across the country, it avoids the remedy proposed by petitioner that *Lafler* forbids.

*Lafler* contemplates two general remedial scenarios upon a criminal defendant's satisfaction of *Strickland* in the plea-offer context:   (1) if resentencing would redress the constitutional injury, the trial court could "exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between"; and (2) if resentencing would not fully redress the constitutional injury, the trial court "may . . . require the prosecution to reoffer the plea proposal," and then "decid[e] whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed."   566 U.S. at 170–71 (citations omitted).   In both circumstances, "*the trial court* must weigh various factors" in fashioning a remedy, including the "defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions" and post-plea-offer factual developments about the crime. *Id.* at 171–72 (emphasis added).   And both allow a trial court to leave the sentence and conviction "undisturbed." *Id.* at 171.   Given the lack of an initial plea offer, *Lafler*'s remedial scheme simply cannot apply.   What is a federal court sitting in habeas review to do here?

Byrd requests that his "convictions and sentences . . . be vacated and the case remanded to the pretrial stage so that [he] can enter into plea negotiations with the prosecution from the same position of strength as he had before."   But we have no authority to vacate Byrd's convictions and order the state to commence pretrial proceedings anew. *Lafler* permits a trial court—not a habeas court—to vacate a conviction.   And it may only do so in one, narrow circumstance:   if "resentencing alone" does not fully cure the constitutional injury, a trial court

may "require the prosecution to reoffer the plea proposal" and then—and only then—may the court "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id.* at 171, 174–75. Vacating the conviction may only come *after* a plea proposal for the sole purpose of accepting a plea deal. *Lafler*'s remedial regime only guarantees the restoration of the opportunity to consider a previously offered plea deal, nothing more.

What about ordering the state to propose a plea agreement? Mandating that a state offer a plea agreement it never formally contemplated or created in the first instance would be exactly the kind of "windfall" *Lafler* instructs us to avoid creating. *Id.* at 170. Doing so would "unnecessarily infringe on competing interests . . . [and] needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* (citations omitted). No caselaw supports the notion that the federal judiciary can make a state executive offer a plea deal in these circumstances.

Indeed, it says the opposite. Whether to offer fewer or lesser charges in exchange for not burdening the state with the risks and expenses associated with trial (and appeal and collateral proceedings as well) is a matter purely reserved to prosecutorial discretion. *See Weatherford*, 429 U.S. at 561; *United States v. Moody*, 778 F.2d 1380, 1385–86 (9th Cir. 1985), *amended*, 791 F.2d 707 (9th Cir. 1986); *People v. Conat*, 605 N.W.2d 49, 57–58 (Mich. Ct. App. 1999); *cf. Town of Newton v. Rumery*, 480 U.S. 386, 396 (1987) (plurality op.); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Nor is an offer to plead guilty, as *Lafler* and *Frye* reiterate, locked in stone, forever irrevocable and binding upon delivery to a defendant. *See, e.g.*, *Frye*, 566 U.S. at 149; *see also Mabry*, 467 U.S. at 507–11; *Scotland*, 614 F.2d at 364–65. Requiring a state prosecutor to set aside his absolute prosecutorial discretion, create a plea offer from whole cloth, and propose it to a defendant that a jury has already tried and convicted would unquestionably upset comity principles and the delicate balance that is separation of powers. *See, e.g.*, *United States v. Redondo-Lemos*, 955 F.2d 1296, 1299 (9th Cir. 1992) ("The doctrine of separation of powers requires judicial respect for the independence of the prosecutor." (quotation omitted)); *State v. Donald*, 10 P.3d 1193, 1204 (Ariz. Ct. App. 2000) (holding that a court may not "order the State to offer a plea agreement entirely of the court's concoction" because "[s]uch a holding

would surely violate separation of powers"); *People v. Heiler*, 262 N.W.2d 890, 895 (Mich. Ct. App. 1977) ("For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers." (citation omitted)).

In short, the lack of a constitutionally permissible remedy further supports the denial of Byrd's claim.

## II.

My colleagues disagree. Seven short points in response are in order.

First, the facts. The majority opinion tells a story of a prosecutor who "was interested in—and, indeed, would have preferred—negotiating an agreement" with Byrd. But that is not what the prosecutor testified to during the evidentiary hearing below. At best, he testified that he might have had an "incentive" to offer a plea deal due to the circumstances of Byrd's case—Byrd is a General Motors' retiree with little criminal history, and his co-defendant (the shooter) already pleaded guilty. And the prosecutor stated that he "would . . . have been amenable to sitting down and talking to" Byrd's counsel about a possible plea deal. More specifically, he would have been "amenable to a second degree murder plea," but could not say the same to armed robbery. There is simply no record support for the assertion that Byrd's prosecutor "would have preferred" coming to an agreement with Byrd.

Second, the majority opinion accuses me of interpreting *Lafler* in an "overly constrained" manner. But it is *Lafler*'s words that constrain us, not my reading of it. *Lafler* says that "*[d]uring* plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" 566 U.S. at 162 (citation omitted and emphasis added). Yet the majority views *Lafler* as authorizing habeas relief if there is a "reasonable probability that but for counsel's errors, the petitioner would have received a plea offer." This is faulty for at least two reasons. For one, it rewrites *Lafler*'s basic premise as follows: "*Before and* during plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" For another, it omits *Lafler*'s critical distinction between "[i]f a plea bargain has been offered" and "[i]f no plea offer is made." *Id.* at 168. In the case of the latter, as here, the Constitution affords no respite. *Id.* ("If no plea offer is

made, . . . the issue raised here simply does not arise"). I am baffled by the majority's failure to even mention, yet alone attempt to distinguish, *Lafler*'s on-point and limiting language here.

Third, and in a similar vein, the majority opinion says *Weatherford*'s there-is-no-constitutional-right-to-plea-bargain command is "not relevant" and "beside the point" because the issue before us is the ineffectiveness of Byrd's counsel. This astonishing dismissal of a foundational element of criminal law blatantly ignores *Lafler*. That decision made clear that the absence of a right to be offered a plea was "beside the point" "[i]n the circumstances [t]here." *Id.* Again, it is *Lafler*'s very next sentence—unacknowledged by my colleagues—that is the point: "If no plea offer is made, . . . the issue raised here simply does not arise." *Id*; *see also Rodriguez-Penton*, 905 F.3d at 489; *Sanchez*, 745 F. App'x at 705–06; *Garton*, 501 F. App'x at 839–40; *Rendon-Martinez*, 497 F. App'x at 849. Not only that, the majority's reasoning elevates the right to effective assistance of counsel to that of a substantive right without regard to whether counsel's ineffectiveness implicated a substantive right. That cannot be. *See, e.g., United States v. Cronic*, 466 U.S. 648, 658 (1984); *see also Williams*, 583 F.3d at 1259 (Gorsuch, J., dissenting from the denial of rehearing en banc) ("[T]he Supreme Court has told us over and again that the Sixth Amendment right to effective assistance of counsel is not itself the font of substantive legal rights, but an instrumental right designed to ensure that the criminal defendant's lawyer sees to it that he receives all the protection to which other laws entitle him.").

Fourth, the majority opinion uses our split decision in *Rodriguez-Penton* to go beyond the outer limits of *Lafler* and *Frye*; but that opinion, however correct,[6] does not have the precedential weight ascribed to it as the majority would like. My colleagues' attempt to get out from *Rodriguez-Penton*'s damning statement that "if the Government exercises its discretion not to bargain for a guilty plea, *no constitutional question is presented*," 905 F.3d at 489 (emphasis added), cannot be reconciled with the facts of this case. They read *Rodriguez-Penton* as supportive here because it authorized the petitioner to establish prejudice by showing that "he would have bargained for *a more favorable* plea." *Id.* at 488 (emphasis added). The emphasis demonstrates the distinction between that matter and this one. There, the parties actively

---

[6]Indeed, there is a compelling argument to be made that *Rodriguez-Penton* itself expanded the right at issue beyond which *Lafler* and *Frye* authorized. *See* 905 F.3d at 490–95 (Thapar, J., dissenting).

engaged in plea negotiations, with the government offering "at least two separate plea deals." *Id.* at 484. But here, it is undisputed the plea-bargain process never commenced.**[7]**

Fifth, the majority opinion blindly accepts Byrd's request that we vacate his convictions and sentences and "reset" his case to before the asserted constitutional taint occurred, proclaiming "[h]e is entitled to the habeas relief he seeks." This authorization to trammel upon a trial court's absolute discretion in fashioning an appropriate remedy is an affront to *Lafler* and cannot stand. Most notably, it strips a trial court of its discretion to "leave the conviction undisturbed," plea agreement notwithstanding. *Lafler*, 566 U.S. at 171; *see also* Mich. Ct. Rule 6.302(C)(3)(a); Fed. R. Crim. P. 11(c)(3)(A). No reading of *Lafler* permits federal judges sitting in habeas review to wield the power the majority now utilizes.

Sixth, to the extent the majority's opinion can be read as not vacating Byrd's convictions and sentences, but nebulously ordering that the state reopen "proceedings consistent with this opinion," I do not know what that means. Nowhere does the majority opinion identify a constitutionally repugnant *proceeding*. *See Rodriguez-Penton*, 905 F.3d at 492 (Thapar, J., dissenting) ("A plea negotiation is not a 'proceeding,' and a defendant has no right to it."). Yet the result of today's opinion requires the State of Michigan to release Byrd unless it cures a constitutional flaw of a proceeding to which Byrd was not entitled by starting a new one.

Finally, a note about what the majority opinion does not do. It, rightly so, does not order the State of Michigan to offer a plea deal. The Wayne County Prosecutor's Office and the State of Michigan have already committed significant resources to both obtain Byrd's convictions and defend his various direct appeal and collateral attacks. There is ample reason to think these expenditures alone would justify refusing to explore the possibility of a plea deal on remand.

III.

---

**[7]**The same can be said for those cases relied upon by *Rodriguez-Penton* for that proposition—all of those "supportive" cases also involved active plea negotiations. *See United States v. Aguiar*, 894 F.3d 351, 354–55 (D.C. Cir. 2018); *United States v. Swaby*, 855 F.3d 233, 237 (4th Cir. 2017); *United States v. Rodriguez-Vega*, 797 F.3d 781, 784–85 (9th Cir. 2015); *DeBartolo v. United States*, 790 F.3d 775, 777 (7th Cir. 2015); *Kovacs v. United States*, 744 F.3d 44, 48 (2d Cir. 2014). The majority's remaining case, *Gabay v. Woodford*, 418 F. App'x 649, 651 (9th Cir. 2011), is of no value—it is unpublished, against the weight of authority, and, most importantly, was issued before *Lafler* and *Frye.*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel "[d]uring plea negotiations." *Lafler*, 566 U.S. at 162. The Supreme Court has expressly drawn a line at the offer of a plea deal in refining this phrase and has never extended the Sixth Amendment to include the right to receive a plea offer. *Id.* at 168. Our caselaw, and that of our sister circuits and state courts faithfully embrace this as a condition precedent to the claim petitioner seeks here. And without this necessity, courts are wholly at a loss to fashion a constitutionally permissible remedy given separation of powers and federalism concerns.

For these reasons, I respectfully dissent. I would affirm the judgment of the district court.