NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1293n.06

No. 11-1961

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 18, 2012*

DEBORAH S. HUNT, Clerk

WILLIAM RYAL,

    Petitioner-Appellant,

v.

BLAINE LAFLER, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

Before:  MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  A Michigan jury convicted William Ryal of molesting his two young stepdaughters repeatedly over a five-year period.  The Michigan Court of Appeals affirmed his convictions and the Michigan Supreme Court denied review.  Ryal thereafter sought a writ of habeas corpus under 28 U.S.C. § 2254, alleging ineffective assistance of counsel.  The district court denied his petition.  We affirm.

I.

In 1993, Ryal began to molest his five-year-old stepdaughter ("Victim A").  Ryal would have Victim A sit on his lap, and then insert his finger into her vagina.  On one occasion, he had Victim A get into bed with him, and forced her to put her hand on his penis.  This abuse continued until Victim A was eight years old.  Around the same time, Ryal started molesting his eleven-year-old

stepdaughter ("Victim B"). As with Victim A, Ryal would have Victim B sit on his lap, and then fondle her breasts and insert his finger into her vagina. One time, Ryal took Victim B into the bathroom and told her to remove all of her clothing. After she did so, Ryal kissed her breasts and touched her all over her body.

Victim A eventually reported the abuse, and Ryal was charged with one count of first-degree criminal sexual conduct in violation of Mich. Comp. Laws § 750.520b(1)(a), and one count of second-degree criminal sexual conduct in violation of Mich. Comp. Laws § 750.520c(1)(a). Victim B then came forward, and Ryal was charged with two more first-degree counts and two more second-degree counts of criminal sexual conduct. The trial court consolidated the two cases, and a jury convicted Ryal on all six counts. The court then sentenced Ryal to concurrent prison terms of 12 to 30 years for each first-degree conviction, and 10 to 15 years for each second-degree conviction.

After exhausting his state remedies, Ryal sought a writ of habeas corpus under 28 U.S.C. § 2254, alleging ineffective assistance of counsel. The district court denied his petition, but granted a certificate of appealability. This appeal followed.

II.

A.

We review de novo a district court's denial of a petition for a writ of habeas corpus. *Miller v. Colson*, 694 F.3d 691, 695 (6th Cir. 2012). Here, the Michigan Court of Appeals adjudicated Ryal's ineffective-assistance claim on the merits. We may not grant the writ, therefore, unless its adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

To prove ineffective assistance, Ryal must make two showings. First, he must show that his "counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To do so, Ryal must prove "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. And second, he must show that "the deficient performance prejudiced the defense." *Id.* at 687. To do that, Ryal must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In addition, because we are reviewing Ryal's petition under § 2254, "[t]he question is not whether [we] believe[] the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted).

## B.

### 1.

Ryal first argues that his attorney was ineffective for failing to object when the trial court amended the date of the offenses alleged in the information. With respect to Victim B, Ryal was initially charged with two counts of first-degree criminal sexual conduct that allegedly occurred around March 8, 1996. At the end of Ryal's preliminary examination, the court changed the date of the alleged offense to March 1995 through March 1996. After the trial ended, the court changed the date again, to 1993 through 1997. Ryal's attorney did not object to either amendment.

The Michigan Court of Appeals rejected this claim on the merits, holding that the failure to object did not prejudice Ryal under *Strickland*. That determination was reasonable. Ryal contends that he suffered prejudice because he did not know he would be defending against acts that had

occurred after March 1996. Ryal has not, however, offered any argument or evidence illustrating how he would have defended differently. Ryal has not shown, therefore, that there is a reasonable probability that the result of the trial would have been different if his attorney had objected. So we reject this argument.

2.

Ryal next argues that his attorney should have objected when the prosecutor notified him that she intended to introduce other-acts evidence during the trial. The prosecutor gave Ryal two identical notices, one for each trial. They stated that the other-acts evidence "will concern other incidents of sexual contact and/or penetration involving defendant and his other step-daughter" and would be offered to prove "motive, opportunity, intent, scheme, plan, or system in doing an act, and/or the absence of mistake or accident in committing the charged offenses." Ryal contends that his attorney should have objected because these notices were clearly improper under Michigan law.

The Michigan Court of Appeals agreed that the notices were insufficient. Rule 404(b) of the Michigan Rules of Evidence provides: "The prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence." Mich. R. Evid. 404(b)(2). These notices failed to satisfy that test, the court held, "because [they] were] nothing more than a mere recitation of the enumerated potential proper purposes under MRE 404(b)."

The court went on to hold, however, that the attorney's failure to object did not prejudice Ryal under *Strickland*. Again, that determination was reasonable. It is true that, if Ryal's attorney

had objected, the prosecutor would have had to state more clearly her rationale for introducing the evidence. But Ryal has not shown that forcing the prosecutor to do so would have had any effect on whether the evidence was ultimately admitted. Michigan law allows the prosecutor to introduce evidence regarding sexual acts between the defendant and another victim to show a common scheme. *See People v. Sabin*, 614, N.W.2d 888, 901 (Mich. 2000). And here, the state court of appeals held that the evidence was similarly admissible to show a common scheme. Thus, Ryal has not shown that an objection to the notice would have affected the outcome of the trial.

Ryal objects to the state court's holding that the evidence was admissible under the Michigan Rules of Evidence. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) (quotation marks omitted). So this argument is meritless.

3.

Ryal also argues that his attorney should have objected when the prosecutor introduced other-acts evidence during the trial. As shown above, however, any objection would have been futile because the evidence was admissible under state law. And Ryal's attorney "was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Thus, Ryal has not shown that his attorney's decision against objecting was deficient performance under *Strickland*.

4.

Next, Ryal argues that his attorney should have requested a limiting instruction for the other-acts evidence. The Michigan Court of Appeals considered this argument, and held that the

attorney's decision not to request a limiting instruction was a reasonable strategic decision. The court concluded that, if Ryal had requested a limiting instruction, then the trial court would have told the jury that some of "the sexual assaults were to be considered as a common scheme involving both the complainants." The appeals court reasoned that, although such an instruction could have benefitted Ryal, it could have harmed him too, by focusing the jury on the fact "that certain [sexual assaults] were part of a devious plan[.]" Thus, the court declined to second-guess the attorney's strategic judgment.

Although this argument presents a closer call, on this point the state court's decision was reasonable. Given that Ryal faced six counts of criminal sexual conduct at trial, his attorney could have reasonably concluded that the jury already believed that Ryal had a propensity to molest young girls. And if the jury already believed that, then the limiting instruction would be more likely to focus the jury on the idea of a common scheme than it would be to help him. It was reasonable for the state court to conclude that this choice was strategic, and "[s]trategic choices by counsel . . . do not rise to the level of a Sixth Amendment violation." *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000)).

5.

Ryal also argues that his attorney's opening statement denied him the effective assistance of counsel. There, the attorney said:

> This happened, we believe, sometime in 1995 or thereabouts. . . . [O]ne girl was five or six years old. The other girl was 12 or 13. . . . [I]t's almost ten years ago when these things happened. And that makes it difficult for my job now and for Mr. Ryal to put up any type of defense. Not that we have to . . . but how are we going to poke holes in something that never happened? How are we going to poke holes in

something that we don't have a lot of facts so say, well, where did it happen, or what were you wearing?  And there's no specific facts, and that's what you need to pay attention to is they have no specific facts to speak of.

The appeals court thought this opening was both "passive" and "unusual."  But it held that it could not find that the opening "failed to meet the minimum standards as set forth by [Michigan's] Supreme Court."  That holding was a reasonable one under *Strickland*.  Ryal contends that his attorney "conceded guilt" when he said "[t]his happened, we believe, sometime in 1995 or thereabouts[.]"  Read in context, however, this sentence refers to the time when the assaults allegedly happened, not whether they actually happened.  Ryal also contends that his attorney "said that it was difficult to put up any kind of a defense."  But again, in context, Ryal's attorney was saying that the case was difficult to defend because of the prosecution's lack of specific allegations, not because Ryal was guilty.  This argument is therefore meritless.

6.

Ryal next argues that his attorney should have objected to a number of leading questions that occurred throughout the trial.  The Michigan Court of Appeals agreed that Ryal's attorney should have objected.  But the court held that "part of [his] strategy was to not portray himself as an obstructionist."  That decision can be reasonable under *Strickland*:  sometimes "[s]ilence can constitute trial strategy."  *Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002) (quotation marks omitted).  And here, Ryal has not shown that this decision was an unreasonable one.

7.

In addition, Ryal argues that his attorney should have objected to testimony that improperly vouched for the victims' credibility.  Ryal points to two statements in particular.  First, he points to

the testimony of the investigating officer, Detective Stark, who said that "[t]here was nothing to support" the idea that the victim had made up the allegations of abuse. But on cross-examination, Ryal's attorney got Detective Stark to admit that "whether [the victims] are telling the truth or lying is ultimately up to the jury or the Judge." So Ryal cannot show prejudice on this point.

Second, Ryal points to the prosecutor's statement during closing argument that there was no indication that Victim A had made the accusations to seek attention, or that Victim B had changed her testimony. But those statements do not amount to improper vouching. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [government] behind that witness." *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012) (alteration in original) (quotation marks omitted). Here, the prosecutor said nothing about her own personal belief in the witness's credibility. This argument is therefore meritless.

8.

Finally, Ryal argues that his attorney should have recommended that he take a plea deal from the prosecutor during jury deliberations. After both sides had rested, the jury deliberated for two full days. During the second day, the assistant prosecutor offered Ryal a deal: if he pled guilty to a misdemeanor, with a one-year jail sentence, she would drop the remaining charges. Ryal's attorney told him about the offer, but did not recommend whether he should accept or reject it. Instead, according to Ryal, his attorney kept saying "we won the case." So Ryal rejected the offer.

The Michigan Court of Appeals considered this argument, and held that "there is no ineffective assistance because defendant was aware of the charges and the plea consequences." That

determination was a reasonable application of *Strickland*. Ryal's attorney informed him of the offer and made a prediction about the likely outcome of the case. Given that the jury had deliberated for two full days, and that the prosecutor was offering such a lenient plea deal, that prediction was reasonable. True, the prediction turned out to be incorrect, but "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012). Ryal had the ultimate responsibility to decide whether to accept the offer. He made his choice, and he must accept the consequences of his decision.

The district court's judgment is affirmed.