NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0332n.06

No. 20-6102

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EMMANUEL BIBB HOUSTON,

    Petitioner-Appellant,

v.

SHAWN PHILLIPS, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)

**FILED**
Aug 16, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which GIBBONS, J., joined. COLE, J. (pg. 16), delivered a separate opinion concurring in the judgment.

ALICE M. BATCHELDER, Circuit Judge. Emmanuel Bibb Houston is a Tennessee prisoner seeking federal habeas relief pursuant to 28 U.S.C. § 2254. Ten years ago, during his state proceedings, he and the State made several attempts to reach a plea agreement. But negotiations reached an impasse when the State was adamant that Houston serve 85 percent of a twelve-year sentence, and Houston was adamant that he serve no more than 30 percent. The case went to trial, the jury convicted Houston, and the court sentenced him to twenty-three years in prison.

In this federal habeas petition, Houston claims—for the first time—that he would have accepted the State's final plea offer had his trial counsel not made two inaccurate remarks about the strength of the State's case. The district court denied Houston's petition. We affirm.

**I.**

In 2013, a Tennessee jury found Houston guilty of especially aggravated kidnapping, especially aggravated burglary, and facilitation of especially aggravated robbery. *State of Tennessee v. Houston*, No. M2013-01177-CCA-R3-CD, 2014 WL 2547795, at *1, *5 (Tenn. Crim. App. June 4, 2014), *perm. app. denied* (Tenn. June 15, 2015). The conviction was based on evidence that, in 2012, Houston entered Gregory Marlin's home and struck Marlin repeatedly with a baseball bat, knocking him to the ground and inflicting severe injuries. *Id.* at *1–4. Houston "pinned" Marlin down by pressing the bat to his neck, while one of Houston's several accomplices stole items from Marlin's home. *Id.* at *1. Another accomplice held a gun to the back of Marlin's neck, and Houston told him to "[g]o on and kill [Marlin]." *Id.* The accomplice did not shoot Marlin, so Houston "hogtied" Marlin, and they "threw" him into the bathroom and shut the door. *Id.* at *1–2.

After the jury's verdict, the trial court reduced Houston's especially-aggravated-burglary conviction to aggravated burglary and sentenced him to twenty-three years in prison. *Id.* at *5. Houston unsuccessfully appealed his conviction and sentence.[1] *Id.* at *10.

***Pretrial Negotiations***. Prior to trial, Houston's counsel and the prosecutor "worked diligently" and "tried many times" to reach a plea agreement. Houston told his trial counsel that he would plead guilty in exchange for a twelve-year sentence with parole eligibility after serving 30 percent of his sentence. But the prosecutor never offered him that good a deal. The prosecutor's most lenient offer was a twelve-year sentence with 85 percent release eligibility. Houston rejected that offer and opted for trial. All five of Houston's co-defendants accepted plea deals. One co-

---

[1] Houston's trial counsel also served as his appellate counsel. Based on his appellate representation in the case, Houston's counsel received a censure from the Board of Professional Responsibility.

defendant, Deonta Twilley, accepted a deal to serve an eight-year sentence with 30 percent release eligibility. Although Twilley faced the same charges Houston did, he ultimately pleaded guilty to especially aggravated burglary and robbery.

***State Habeas Petition***. Represented by new counsel, Houston filed a petition for postconviction relief in state court.[2] The petition raised numerous ineffective-assistance-of-counsel claims, none of which is relevant to this appeal. The trial court held an evidentiary hearing and denied Houston relief on all grounds. Houston appealed, and the Tennessee Court of Criminal Appeals affirmed. *Houston v. State*, No. M2016-00467-CCA-R3-PC, 2017 WL 2558812 (Tenn. Crim. App. June 13, 2017), *perm. app. denied*, (Tenn. Oct. 4, 2017). The Tennessee Supreme Court denied Houston leave to appeal. *Id.*

***Federal Habeas Petition***. Houston then filed the present petition for habeas relief in federal court pursuant to 28 U.S.C. § 2254. He again claimed that his trial counsel was ineffective in various respects and the evidence was insufficient to support his conviction for especially aggravated kidnapping. For the first time, though, one of Houston's ineffective-assistance-of-counsel claims challenged his trial counsel's pretrial assessment of the prosecutor's case. According to Houston, his trial counsel told him (1) that "he believed the [prosecutor's] case to be one of aggravated assault," and (2) that the especially-aggravated-kidnapping charge against Houston was "foundless." Testimony from the state court's postconviction relief hearing serves as the sole evidence of these two remarks. Houston's trial counsel testified at the hearing:

> Q: Did you tell [Houston] that at most this was an aggravated assault case?
> A: I thought that was our case. I don't remember saying that, "At most, this is an aggravated assault case."

---

[2] Houston originally filed a pro se petition for postconviction relief.

Q: Did you tell [Houston] that all your colleagues agreed with your assessment in that respect?

A: Yes, I probably did, because I think that was the general consensus that the aggravated – especially aggravated kidnapping charge was found-less.

Q: Now, I heard you say that you did give Mr. Houston your advice, that you thought, "Hey, at worse this really just looks like an aggravated assault perpetrated against [the victim]?"

A: Yes.

Houston testified at the hearing:

Q: Okay. Did [trial counsel] tell you throughout all phases of this, "Don't worry about things, this is just an aggravated assault"?
A: Every time we come to the courthouse, he said, "Man, these guys think this is a joke, that you – you actually did a couple of guys a favor by beating that character up. And we all just think that this is a big aggravated assault. Don't worry about it."

At the same hearing, however, Houston's trial counsel testified that he did not guarantee any trial result or promise that Houston would be convicted of only aggravated assault. Trial counsel also testified that he explained to Houston the sentencing exposure Houston faced if he went to trial.

The district court denied Houston's § 2254 petition and declined to issue a certificate of appealability, explaining that Houston's new ineffective-assistance claim lacked merit. The court noted that Houston's procedural default was "arguably" excused but nonetheless held that Houston's trial counsel was "not ineffective for sharing his opinion about the case with [Houston], and nothing in the record suggests that this statement prejudiced" Houston. Houston timely appealed. We granted Houston a certificate of appealability on this claim.

**II.**

Houston petitions for habeas relief pursuant to 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). He claims that he was denied his constitutionally guaranteed right to counsel under the Sixth Amendment because two remarks made by his trial counsel in 2012 misinformed him about whether to accept a plea deal, and that he would have

4

taken a plea deal had he been given correct advice. Houston also argues that, even though his claim is procedurally defaulted because he never raised it in state court, we should excuse the default because his state postconviction counsel was also ineffective.

For the reasons below, we disagree.

## A. Procedural Default

In general, a federal court reviewing the lawfulness of a state prisoner's detention may grant habeas relief only if the prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Trevino v. Thaler*, 569 U.S. 413, 421 (2013). Our review is also circumscribed by our deference to state-court judgments that rest upon independent and adequate state-procedural grounds, *Coleman v. Thompson*, 501 U.S. 722, 729–31 (1991), and by the congressional mandate that, generally, petitioners exhaust available state remedies before pursing federal habeas relief, 28 U.S.C. § 2254(b)(1)(A); *see Johnson v. Bauman*, 27 F.4th 384, 388 (6th Cir. 2022). Thus, we normally decline to exercise habeas review when a petitioner fails to raise a claim in state court and cannot do so now due to a state procedural rule. *Coleman*, 501 U.S. at 731–32. Such a claim is considered "procedurally defaulted" and principles of comity, finality, and federalism counsel against disturbing a state-court conviction without the state court's having had the opportunity to first address the claimed error. *Id.* at 730–32, 750; *see Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

In limited circumstances, however, a petitioner may overcome this hurdle if he can establish "cause" to excuse the default—such as when there is an attorney error—and that he suffered "prejudice" from the asserted error. *Davila*, 137 S. Ct. at 2064–65 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). In this scenario, to qualify as "cause," the attorney error must amount to constitutionally ineffective assistance of counsel. *Id.* at 2065. And, until some years

ago, an attorney error in state postconviction proceedings did not qualify as "cause" because a petitioner has no constitutional right to counsel in those proceedings. *Coleman*, 501 U.S. at 752–53. Nevertheless, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court created an equitable "qualification" of this rule. *Id.* at 15–17. It applies where state procedural law requires, or effectively requires, petitioners to raise claims of ineffective assistance of trial counsel in a state postconviction proceeding, rather than on direct appeal. *Id.* at 17; *see Trevino*, 569 U.S. at 429 (expanding *Martinez*'s scope). In those states, ineffective assistance of *postconviction* counsel may establish "cause" to excuse the procedural default of a petitioner's underlying ineffective-assistance claim against his *trial* counsel. *Martinez*, 566 U.S. at 14. Importantly, the petitioner must also demonstrate that his defaulted ineffective-assistance claim is "substantial," "which is to say that . . . [it] has some merit." *Id.* The *Martinez* framework applies to Tennessee's procedures. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014). We review de novo whether a claim is barred by procedural default. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013).

Houston argues that his defaulted claim falls under the purview of *Martinez*. He contends that "cause" and "prejudice" exist because his state postconviction counsel failed to raise the "bad advice" claim that Houston now pursues. According to Houston, his postconviction counsel knew to raise such a claim in the state postconviction petition because, during the postconviction hearing, he questioned Houston's trial counsel about the pretrial remarks he made to Houston. Houston also faults his postconviction counsel for not further developing the claim during the hearing. The State does not challenge Houston's cause-and-prejudice argument, but instead focuses on Houston's underlying ineffective-assistance-of-trial-counsel claim, arguing that the claim is not "substantial."

We have good reasons to doubt that Houston's procedural default is excused by way of his postconviction counsel's ineffectiveness under *Martinez*.[3] But we need not fully address those reasons because the State is correct: the record and our precedent squarely foreclose Houston's underlying claim against his trial counsel.

## B. Ineffective Assistance of Trial Counsel

Houston's principal ineffective-assistance claim against his trial counsel fails under *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on this claim, Houston must establish (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Id.* at 687. Counsel's performance is deficient if it is objectively unreasonable under prevailing professional norms. *Id.* at 687–88; *see Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020). In other words, the attorney error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

---

[3] For example, it appears that Houston's postconviction counsel made "a deliberate, tactical decision not to pursue" this particular ineffective-assistance-of-trial-counsel claim in postconviction proceedings, which "is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of its criminal cases." *Smith v. Murray*, 477 U.S. 527, 534 (1986). Indeed, Houston emphasizes in his brief that his postconviction counsel's decision was "not accidental." Moreover, Houston does not argue that this defaulted claim was "clearly stronger" than the twelve other ineffective-assistance claims that his postconviction counsel did raise in state postconviction proceedings. *See Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) ("[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." (quoting *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003))).

When considering a denial of habeas relief under 28 U.S.C. § 2254, we review the district court's legal conclusions de novo and its factual findings for clear error. *England v. Hart*, 970 F.3d 698, 706 (6th Cir. 2020). And when, as here, no state court has "adjudicated [the petitioner's claim] on the merits," we do not apply § 2254(d)'s deferential standard. *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## 1. Performance

Houston's trial counsel advised Houston that the prosecutor's case was simply one of aggravated assault and that the especially-aggravated-kidnapping charge was "foundless." Houston says that because this advice was ultimately incorrect, it amounts to constitutionally deficient performance. We cannot agree.

An attorney's professional prediction that does not become reality is not necessarily deficient performance. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). Here, Houston's trial counsel never guaranteed Houston a particular result at trial, and he fully advised Houston of the charges and his potential sentencing exposure if he were to reject the plea offer. Therefore, counsel's pretrial remarks were not objectively unreasonable when taken in context. *See Logan v. United States*, 910 F.3d 864, 872 (6th Cir. 2018) (holding that a trial counsel's "erroneous . . . prediction" of the case at the plea bargaining stage was "not necessarily deficient performance" because the petitioner was nevertheless "given all he needed to make an informed decision on the plea offer"); *Ryal v. Lafler*, 508 F. App'x 516, 522 (6th Cir. 2012) (finding no ineffective assistance where the petitioner was made "aware of the charges and the plea consequences" even though his trial counsel's pre-plea deal "prediction [about the likely outcome of the case] turned out to be incorrect").

8

Houston points to the jury's "quick[]" two-and-a-half-hour deliberation as evidence of counsel's deficiency. But the length of jury deliberations does not determine whether an attorney's performance falls outside the wide range of reasonable professional assistance. And we must take great care to "eliminate the distorting effects of hindsight" when assessing attorney performance. *Strickland*, 466 U.S. at 689.

Houston also attempts to liken his case to *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019), in which we found that counsel's ineffectiveness deprived the defendant of the opportunity to secure a plea deal. *Id.* at 251. During oral arguments, Houston's counsel described the present case as "*Byrd* on steroids." The attorney performance in *Byrd*, however, is nothing like what occurred in this case. In *Byrd*, the defense counsel made at least three professional errors. First, counsel refused to engage in plea negotiations and was "determined to go [to] trial" despite the desire of the prosecutor and Byrd to reach a plea agreement. *Id.* at 251–52. Second, counsel harbored a "shocking lack of comprehension regarding the pertinent law," "convinced Byrd that a guilty plea was unnecessary and against his interest," and "assured Byrd that he would 'hit a home run' for him by securing an acquittal, and that Byrd would be 'going home.'" *Id.* at 253, 257. Finally, and perhaps most egregiously, counsel did not explain to Byrd the legal concepts underlying Byrd's case or Byrd's potential sentencing exposure under the guidelines. *Id.* at 253, 258.

Rather than "*Byrd* on steroids," this case is *Byrd* through the looking glass[4]—nearly the opposite happened here. Houston's trial counsel was very amenable to negotiating a plea deal with the prosecutor, and the two of them "worked diligently" and "tried many times" to reach an agreement. Counsel did not pressure Houston to reject the prosecutor's best offer, nor did he

---

[4] Lewis Carroll, *Through the Looking-Glass* 121 (Penguin Books 1998) (1872); *see Roberts v. Universal Underwriters Ins. Co.*, 334 F.3d 505, 513 (6th Cir. 2003) (Batchelder, J., concurring); *United States v. Taylor*, 142 S. Ct. 2015, 2026 (2022) (Thomas, J., dissenting).

guarantee that Houston would be acquitted, or that Houston would receive a short sentence if convicted. Instead, unlike the counsel in *Byrd*, Houston's counsel properly explained to Houston the relevant legal concepts and Houston's potential sentencing exposure if he went to trial. His counsel's pretrial advice was merely his (perhaps overly optimistic) professional assessment of the prosecutor's case. It was not erroneous advice on a matter of law. *Cf. Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (finding ineffective assistance where counsel gave "patently erroneous" legal advice regarding the appellate consequences of defendant's guilty plea). This case does not present the type of "apparent," "abundant," and "blatant" incompetence that counsel displayed in *Byrd*, 940 F.3d at 257.

Moreover, the art of plea bargaining involves "complex negotiations suffused with uncertainty." *Premo v. Moore*, 562 U.S. 115, 124 (2011). Thus, an attorney's professional assessment based on the facts as he knew them at the relevant time is entitled to deference. *Id.* at 125 (explaining that "strict adherence" to *Strickland* is "essential . . . at the plea bargain stage" due to "the potential for the distortions and imbalance that can inhere in a hindsight perspective" and the "special difficulties in evaluating" an attorney's performance that is based on a limited record and his "insights borne of past dealings with the same prosecutor or court"); *see also Strickland*, 466 U.S. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Because counsel's mistaken prediction here does not amount to a "manifest deficiency in light of information then available to [him]," Houston cannot satisfy *Strickland*'s demanding standard to prove that he was deprived of effective assistance of counsel. *Premo*, 562 U.S. at 125.

## 2. **Prejudice**

Nor can Houston establish prejudice. To establish prejudice, Houston must show that there is a "reasonable probability" that, but for his counsel's deficiency, he would have accepted the State's more-favorable plea offer. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Houston must also demonstrate that the "prosecution would not have withdrawn [the offer] in light of intervening circumstances" and that the trial court "would have accepted its terms." *Lafler*, 566 U.S. at 164.

The evidence presented here does not establish a reasonable probability that, but for counsel's advice, Houston would have accepted the State's plea offer to serve a twelve-year sentence with an 85 percent release eligibility. Houston argues that his willingness to accept such an offer is "not an issue" because he testified: "I told [trial counsel], 'If I could get a 12 [years] at 30 [percent], I'd get out of y'all's way.'" He argues that "[s]urely" he would have accepted the same sentence with 85 percent release eligibility had his counsel not been ineffective. But the state postconviction hearing tells a different story.

At the hearing, Houston did not testify that his counsel's statements played any role in his decision to reject the plea offer. And even though Houston gave *no* account of his specific reasons for rejecting the plea offer, it seems that his rejection was rooted in a personal dissatisfaction with the release-eligibility percentage, not in a tainted understanding of his case caused by counsel's advice. Houston was adamant that he was willing to serve only 30 percent of whatever sentence he received. At one point during the hearing, he explained that he did not want a sentence with 100 percent release eligibility because he did not "believe [he] did 100 percent worth of a crime." Trial counsel's testimony confirms Houston's adamance. Counsel testified, "Mr. Houston was not interested at 12 at 85 percent . . . . You know, we're talking about a gap there, a percentage, but

we couldn't get to an agreement on it." Counsel later stated, "I've tried many times," after being asked, "[Y]ou're kind of in the middle. You can't make the defendant go up, if he doesn't want to; and you can't make the State come down, if they don't want to?" Similarly, counsel agreed that "it was just a situation where the defendant refused to accept the State's bottom-line offer, and the State refused to accept the defendant's top-line offer." Finally, counsel testified:

> I know that we enter[ed] into all kinds of negotiations, including amending charges, to get to where we want[ed] to be. To get to where we [could] agree on. But there wasn't any number that [Houston] was willing to take above 12, that he ever gave me permission to seek. And there wasn't any number lower than 12 at the 85 percent, that we ever got to with the State. And [Houston] would not take that.

Thus, according to the hearing testimony, despite counsel's numerous attempts, Houston was insistent that he would not accept a twelve-year sentence with 85 percent release eligibility.

Houston's later change of heart and revisionist history is precisely why defendants who seek to undo their plea decisions through claims of ineffective assistance face such a high evidentiary burden. In *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017), the Supreme Court explained: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Any and all contemporaneous evidence in this case points to a conclusion that Houston would have rejected the prosecutor's plea offer regardless of his attorney's comments. For that reason alone, Houston's prejudice argument fails. *See, e.g.*, *Smith v. Cook*, 956 F.3d 377, 394–95 (6th Cir. 2020) (finding no prejudice because, even if trial counsel was deficient, there was no contemporaneous evidence in the record to demonstrate that the defendant "would have taken the deal *at the time*"); *United States v. Pola*, 703 F. App'x 414, 421 (6th Cir. 2017) (finding no prejudice because "the record

12

simply does not establish, by contemporaneous evidence, that [the defendant] would" have pled differently).

Houston makes three additional arguments, none of which is persuasive. First, Houston asserts in his brief that he believed when he rejected the offer that, if convicted, he was facing "no more than five years" in prison—which is the average length of aggravated assault sentences in Tennessee, according to Houston. But that theory twists the facts. Houston's counsel never advised Houston that he was charged with assault (because he wasn't), nor did he inform Houston that he was facing only a five-year sentence. Moreover, Houston bases this argument on sentencing statistics in a report that neither counsel nor Houston discussed. At the time Houston rejected the plea offer, he was aware of his actual sentencing exposure.

Second, Houston argues that it is "common-sense" that he would have accepted such a "generous" plea offer had his counsel not made remarks about the prosecutor's case. But under that logic, prejudice could be found any time a defendant is offered a favorable plea deal—which could be *every* case, because the rudimentary concept of plea bargaining is to exchange leniency for the time, expense, and uncertainty of a full trial. And a case in which there is an unusually generous plea offer begs the question of whether the *trial court* would have accepted the arrangement. Houston's "common-sense" argument also belies reality. Defendants routinely reject favorable plea offers in the face of near-certain convictions. *See United States v. Knight*, 981 F.3d 1095, 1112 (D.C. Cir. 2020) (Katsas, J., dissenting) ("[D]efendants assess trial risks differently, and even a defendant 'almost certain' to be convicted could rationally reject a plea." (quoting *Lee*, 137 S. Ct. at 1968)). And there are a host of reasons unrelated to attorney conduct that might cause a defendant to reject such a plea offer. One possible reason in this case is Houston's knowledge that at least one of his co-defendants, who faced the same charges, received

a better plea deal than he did. Regardless, the point remains that all we have to substantiate Houston's newly expressed plea preferences are his self-serving, post hoc statements and our speculation. Those are not enough.

Third, Houston again leans heavily on *Byrd*. In that case, we found prejudice because the defendant's "interest in proceeding to trial was rooted in misinformation gleaned from his counsel's faulty advice, making it an unreliable metric of reasonably probable outcomes." *Byrd*, 940 F.3d at 258. We explained that because his counsel's advice was "erroneous and omitted critical details," the defendant "lacked the requisite information to weigh the options in front of him" and effectively had "no choice at all." *Id.* at 258–59. By contrast, counsel's performance here was not so "manifest[ly] deficien[t]" that it tainted Houston's understanding of his case and rendered him incapable of making a choice. *See Premo*, 562 U.S. at 125. As we have explained, this is not a situation in which counsel failed to advise his client of the worst-case-scenario consequences of declining a plea offer or in which counsel insisted that his client roll the dice at trial. Counsel fully advised Houston of the charges and evidence against him, the prosecutor's burden of proof, and his potential sentencing exposure. Given these facts, and the lack of contemporaneous evidence to the contrary, Houston cannot show that he had a considerable misunderstanding—or that, even if he did, it was caused by counsel's remarks—that left him unable to make an intelligent decision about whether to accept the prosecutor's plea offer. In the end, Houston made his choice. And *Strickland* does not give him a do-over.

### 3. Evidentiary Hearing

Houston also asks that we remand this case for an evidentiary hearing. He argues that the district court erroneously declined to hold an evidentiary hearing and that a hearing would help develop the record to his benefit. But that avenue was recently foreclosed by the Supreme Court

in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), which limited federal habeas review of defaulted claims to the state-court record, subject to the narrow exceptions listed under § 2254(e)(2) of AEDPA. *Id.* at 1734.

In short, federal habeas courts are prohibited, by statute, from granting evidentiary hearings when petitioners have "failed to develop the factual basis of [their] claim[s] in State court proceedings." *Id.* at 1728 (quoting 28 U.S.C. § 2254(e)(2)). And the equitable rule announced in *Martinez* does not give federal courts authority to amend AEDPA's statutory directives and allow petitioners to expand state-court records to support their ineffective-assistance-of-state-postconviction-counsel claims. *Id.* at 1728, 1736–38; *see also Shoop v. Twyford*, 142 S. Ct. 2037, 2046 (2022).

Because Houston failed to develop the factual basis of his claim in state court, and because none of § 2254(e)(2)'s exceptions apply, Houston is not entitled to an evidentiary hearing.

**III.**

For these reasons, we AFFIRM the judgment of the district court.

COLE, Circuit Judge, concurring in the judgment.

"Our constitution insists . . . that no matter how heinous the crime, any conviction must be secured respecting all constitutional protections." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1741 (2022) (Sotomayor, J., dissenting). The record presented on appeal, however, does not establish that Houston's trial counsel's performance was deficient, nor that it prejudiced Houston's defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Houston is not at fault for his postconviction counsel's failure to raise and develop this claim in state court. But, because Houston's case does not implicate one of "§ 2254(e)(2)'s narrow exceptions to AEDPA's general bar on evidentiary hearings," the Supreme Court's recent decision in *Shinn v. Ramirez* prevents this court from remanding for further evidentiary development. *See Shinn*, 142 S. Ct. at 1740 (alterations and quotation omitted). Accordingly, I concur in the judgment denying Houston's petition for habeas relief.