The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 30, 2026

**2026COA31**

**No. 23CA1597, *People v. Evans* — Attorneys and Clients — Ineffective Assistance of Counsel — Plea Bargains**

In this postconviction case, the defendant argued that his lawyer's ineffective assistance caused him to reject a "soft" plea offer during plea negotiations; as a result, no firm offer materialized and he proceeded to trial, after which he was convicted of felony murder and sentenced to life in prison without parole.  After a hearing, the district court rejected the ineffective assistance of counsel claim, reasoning that the defendant could not establish prejudice in the absence of a firm offer.

A division of the court of appeals, following federal case law on this issue, concludes that the absence of a firm offer does not preclude a claim that counsel's ineffective assistance prevented the defendant from entering a plea pursuant to a plea offer.  To prevail

on that version of an ineffective assistance of plea counsel claim, the defendant must make a threshold showing that, but for counsel's deficient performance, there is a reasonable probability that the prosecution would have made a firm offer.

Because the district court applied the wrong legal standard, the division reverses the district court's denial of the claim and remands for further proceedings. The division also reverses the district court's summary denial of a second ineffective assistance of counsel claim and remands for an evidentiary hearing on that claim.

COLORADO COURT OF APPEALS 2026COA31

Court of Appeals No. 23CA1597
Arapahoe County District Court No. 06CR1201
Honorable Ryan J. Stuart, Judge
Honorable Theresa Slade, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Evans,

Defendant-Appellant.

ORDERS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Grove and Pawar, JJ., concur

Announced April 30, 2026

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Mulligan Breit, LLC, Patrick J. Mulligan, Denver, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Michael Evans, was found guilty of burglary and felony murder in connection with a home invasion that ended with the shooting death of the homeowner. The jury specifically found that Evans was not the shooter, and, indeed, the evidence did not conclusively establish that he was present at the scene of the burglary.

¶ 2    Evans later moved for postconviction relief alleging, primarily, that his lawyer had provided ineffective assistance during plea negotiations by failing to advise him of his potential exposure as a complicitor (the complicity claim) and of his parole eligibility (the parole eligibility claim). Though the claims were presented as somewhat distinct, the gist of the motion was that, together, counsel's failures impeded Evans's ability to properly evaluate a "soft" plea offer, so he rejected it.

¶ 3    The district court issued an order denying the parole eligibility claim after a hearing and, in a separate order, summarily denied the intertwined complicity claim. We conclude that the district court misapplied the law in denying the parole eligibility claim, and that it should have held a hearing on the complicity claim.

Accordingly, we reverse the court's orders and remand the case for further proceedings.[1]

## I. Background

### A. Trial Proceedings

¶ 4    In October 2005, Derek Lanctot and two accomplices broke into the victim's home.  During the burglary, Lanctot and one of the accomplices shot and killed the victim.

¶ 5    A few months later, police searched Evans's apartment in connection with an investigation of an unrelated armed robbery. They found a friend of Evans's, also a suspect in the armed robbery, and, near the friend, a gun later determined to have been used in both the armed robbery and the October burglary-homicide.

¶ 6    During a series of police interviews, Evans eventually admitted knowledge of a plan to burglarize the victim's home and identified Lanctot and two others (not the friend involved in the armed robbery) as the perpetrators.  Evans said that he had helped one of

---

[1] Evans also asserted a claim that his life-without-parole sentence for felony murder violated the Eighth Amendment, a claim the district court denied without a hearing.  In light of our disposition, we decline to address this issue on appeal.  Evans can reassert his challenge to his sentence if there is a subsequent appeal in this case.

the accomplices buy a gun the night before the burglary, but he told police that he had decided not to participate in the crime because he did not have his own gun. He had hoped to loan the group his car, though, because it did not have a license plate, but the car would not start. He repeatedly denied going to the victim's home.

¶ 7     A grand jury returned an indictment charging Evans and Lanctot with first degree felony murder, second degree murder, burglary, and conspiracy to commit burglary. (One of the accomplices whom Evans identified died in December 2005. The other was not charged.)

¶ 8     About two months before trial, Lanctot pleaded guilty, pursuant to a plea agreement, to conspiracy to commit second degree murder in exchange for a stipulated sentence of twenty-five years in prison.[2]

---

[2] Lanctot's twenty-five-year sentence imposed in Arapahoe County Case No. 06CR1193 was ordered to run concurrently with a sixteen-year sentence he had received a year earlier in Arapahoe County Case No. 05CR3211 for a shooting he committed about two weeks after the October burglary-homicide. We may take judicial notice under CRE 201(b) of the court filings in these related cases. *See Doyle v. People*, 2015 CO 10, ¶ 12.

¶ 9    Evans proceeded to trial.  In opening statement, the prosecutor told the jury that two witnesses — Lanctot and an acquaintance of Evans's from the neighborhood — would place Evans at the victim's home on the night of the crimes.  But Lanctot refused to testify and the acquaintance recanted his earlier statement to police implicating Evans.  As a result, the gun found in Evans's apartment was the only direct evidence linking him to the scene of the crimes.  So, during closing argument, the prosecution pressed a complicity theory, telling the jury that Evans "didn't even have to be on the premises to be guilty" of felony murder.  As the prosecutor explained, Evans only "needed to be aiding and abetting the burglary, and in the course of that burglary, somebody's death was caused."

¶ 10    During its deliberations, the jury asked several questions concerning the application of the complicity instruction to burglary,

4

the predicate offense for felony murder.[3]  On the fifth day of deliberations, the jury returned its verdict: It acquitted Evans of second degree murder but found him guilty of felony murder and the burglary counts.  The jury found that Evans had not used or possessed a deadly weapon during the commission of those offenses.

¶ 11     The court imposed a mandatory sentence of life without parole for the felony murder conviction.

---

[3] Specifically, the jury asked the following questions:
- "Do we have to decide that the defendant actually entered the building to be guilty of [first] degree burglary or do we just have to show that he was involved in the planning and took overt steps to assist its happening?"
- "Part of the reasoning for this question [about the interplay between instructions 23 and 25] is the prosecutor's remarks . . . [that] they don't have to prove that [Evans] actually went and participated, only that he was knowingly willing to."
- "Does that mean that if we feel that the defendant satisfies the elements in [the complicity instruction] that we can use the complicity theory for a conviction?"
- "Can you explain the difference between a complicitor and conspirator?"
- "We are having a disagreement on how to understand [the complicity instruction]. . . .  Can you clarify the definition of 'accountable' as it applies to this instruction?"
- Does "element 4 [of instruction 23,] 'committed the crime of first degree burglary,'" include committing the crime as a complicitor?

## B. Postconviction Proceedings

¶ 12 After Evans's convictions were largely affirmed on direct appeal,[4] he filed a timely Crim. P. 35(c) motion.[5] He alleged, as relevant here, that trial counsel provided ineffective assistance by failing to properly advise him about whether to accept a plea offer of approximately twenty-five-years. Specifically, Evans claimed that trial counsel failed (1) to explain the doctrine of complicity liability and its potential application to his case and (2) to properly advise him about parole eligibility. He asserted that, but for counsel's

---

[4] While a division of this court affirmed the convictions for first degree murder and conspiracy to commit burglary, it vacated the conviction for first degree burglary, concluding that it must be merged with the conviction for first degree murder. *People v. Evans*, slip op. at 22 (Colo. App. No. 07CA2158, July 21, 2011) (not published pursuant to C.A.R. 35(f)).

[5] After the trial court merged the first degree burglary conviction into the felony murder conviction, Evans stood convicted of felony murder, then a class 1 felony, and conspiracy to commit burglary, a class 4 felony. The Crim. P. 35(c) motion was timely with respect to the felony murder conviction, but not the conspiracy to commit burglary conviction. *See* § 16-5-402(1), C.R.S. 2025 (except with respect to a class 1 felony, a Crim. P. 35(c) motion must be filed within three years of a defendant's conviction for a felony offense). Accordingly, the conspiracy to commit burglary conviction is not affected by the postconviction proceedings.

6

deficient performance in both respects, he would have accepted the plea offer and avoided a life sentence.

¶ 13    In an initial order, the district court denied the complicity claim without a hearing and granted a hearing on the parole eligibility claim. After holding an evidentiary hearing, the court issued a second order denying the parole eligibility claim, on the ground that Evans failed to establish that the prosecution had made a firm plea offer.

## II.    Ineffective Assistance of Counsel Claims

¶ 14    Evans contends that the court misapplied the law in denying his parole eligibility claim because he did not have to establish the existence of a firm offer, only a reasonable probability that, but for counsel's deficient performance, the parties' negotiations would have resulted in a firm offer that he would have accepted. And he contends that the court erred by denying his complicity claim without a hearing because he alleged facts that, if true, would establish ineffective assistance of counsel. We agree with Evans on both counts.

7

A.    Legal Principles and Standard of Review

¶ 15    A criminal defendant has a constitutional right to the effective assistance of counsel.  U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Rainey*, 2023 CO 14, ¶ 1.  To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense, meaning there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

¶ 16    The court may deny a Rule 35(c) motion without a hearing only if the defendant's allegations are bare and conclusory; the allegations, even if true, do not establish deficient performance or prejudice; or the record refutes the defendant's claims directly. *People v. Duran*, 2015 COA 141, ¶ 9; *see Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

¶ 17    We review the summary denial of a Rule 35(c) motion de novo. *People v. Delgado*, 2019 COA 55, ¶ 6.  When the court denies a Rule 35(c) motion after an evidentiary hearing, however, we review its

ruling as a mixed question of fact and law. *See People v. Sharp*, 2019 COA 133, ¶ 12. Under this standard, we defer to the court's findings of fact if they have record support, but we review its legal conclusions — including "the ultimate determinations on *Strickland*'s performance and prejudice prongs" — de novo. *Id.* (citation omitted).

### B. Parole Eligibility Claim

¶ 18 The question presented with respect to the parole eligibility claim is whether, to demonstrate prejudice, Evans had to establish that the prosecution had extended a formal or "firm" plea offer. He says no, and we agree.

#### 1. Crim. P. 35(c) Proceedings

¶ 19 Evans was twenty years old at the time of the crime. In his Rule 35(c) motion, he alleged that the prosecution extended an offer of "approximately [twenty-five] years" in exchange for his guilty plea to second degree murder. He said that his trial counsel failed to properly advise him about his parole eligibility, and, as a result, he believed he would have to serve one hundred percent of the sentence, so he rejected the offer. He alleged that if he had known

9

that he would be "eligible for parole after service of approximately one half" of the sentence, he would have accepted the offer.

¶ 20    The district court agreed that these allegations, if true, demonstrated deficient performance by trial counsel that prejudiced Evans.  Accordingly, it granted a hearing on the claim.

¶ 21    At the hearing, Evans testified more specifically that he spoke with counsel about a twenty-seven-year plea offer on two occasions, for a couple minutes each time.  Counsel did not explain the concept of parole or advise Evans that he would be eligible for parole under the offer, so he thought he would "be [fifty] when [he] g[o]t home," and he told counsel he would not "tak[e] that deal." Counsel never dispelled Evans's misconception about the amount of time he would serve under the offer.  Indeed, according to Evans, she advised him to reject the offer for an independent reason: there "was no evidence to show" that he was even at the scene of the burglary.

¶ 22    Neither Evans's trial counsel nor the prosecutor on his case remembered much about the pretrial proceedings.  They agreed that plea negotiations in serious cases often begin with a "soft" offer to see if the parties are generally on the same page and might reach a

10

firm agreement. They explained that this process avoids a situation where the prosecutor clears an offer with victims or law enforcement but later learns that the parties are too far apart to reach a disposition.

¶ 23 Trial counsel did not recall plea negotiations, but she acknowledged that her notes, which were admitted as exhibits, indicated that the prosecution had extended some form of a twenty-seven-year offer, which Evans rejected. The evidence also showed that, at a hearing in June 2007, a month before trial and shortly after Lanctot pleaded guilty, trial counsel informed the court that she was "in plea negotiations with the prosecution" and there had "been some movement" toward a disposition, but further discussions were needed before the parties could "firm up an offer."

¶ 24 The prosecutor likewise had no recollection of plea negotiations. He testified that he reviewed his file and did not see any notes indicating that he had made even a "soft" offer in the case.

¶ 25 The district court found that "'soft' negotiations did occur" but that a firm offer was never extended. The court concluded that the absence of a firm offer meant Evans could not establish either

deficient performance or prejudice.  According to the court, trial counsel did not have an obligation to advise Evans about a mere "possible" twenty-seven-year offer, and, because a firm offer was never extended, trial counsel's performance, even if deficient, could not have been the reason Evans did not plead guilty.

2.    The District Court Applied the Wrong Legal Standard

¶ 26    A defendant's right to effective assistance of counsel extends to the plea bargaining process.  *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  Thus, a claim alleging ineffective assistance during plea negotiations is subject to *Strickland*'s two-part analysis.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  To establish prejudice in the context of plea negotiations, the defendant must show a reasonable probability that "the outcome of the plea process would have been different with competent advice."  *Lafler*, 566 U.S. at 163.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which is a standard "somewhat lower" than preponderance of the evidence.  *Strickland*, 466 U.S. at 694.

¶ 27    In one version of an ineffective assistance of plea counsel claim, the defendant alleges that, based on the incompetent advice

of counsel, he rejected a formal plea offer and was convicted after the ensuing trial. *See, e.g.*, *Delgado*, ¶¶ 10-11. A defendant establishes prejudice in that case by showing a reasonable probability that, but for counsel's deficient advice, he would have accepted the offer, it would have been presented to and enforced by the court, and his sentence under the offer would have been less severe than the one imposed after the jury's guilty verdict. *Lafler*, 566 U.S. at 164.

¶ 28    But another version of the claim is also cognizable — that counsel's deficient performance prevented a favorable firm offer from being extended in the first place. *See, e.g.*, *Byrd v. Skipper*, 940 F.3d 248, 256-57 (6th Cir. 2019). A defendant raising this version of an ineffective assistance of plea counsel claim "faces a formidable standard" because, in addition to establishing the other prejudice elements, he must make a threshold showing — that there is a "reasonable probability that but for counsel's errors, [he] would have received a [firm] plea offer." *Id.* at 257.

¶ 29    Two cases with facts similar to those presented here illustrate the concept. In *United States v. Gordon*, the prosecution made an informal offer to resolve the defendant's charges with a

recommended sentence of eighty-four months. 156 F.3d 376, 378 (2d Cir. 1998). Based on counsel's deficient advice about possible sentencing exposure, the defendant rejected the informal offer, and after a trial, he was sentenced to 210 months in prison. *Id.* at 377-78. He later asserted an ineffective assistance of plea counsel claim. The prosecution countered that the defendant could not establish prejudice because no formal offer had been extended. *Id.* at 380. The court rejected that argument, concluding that "whether the government had made a formal plea offer was irrelevant" — the defendant was prejudiced because counsel's advice deprived him of an opportunity to "pursue further plea negotiations" and obtain a formal offer. *Id.*

¶ 30    The court in *United States v. Brooks* reached the same conclusion. Nos. 10-20078-JWL, 14-2624-JWL, 2015 WL 5837636, at *4 (D. Kan. Oct. 6, 2015) (unpublished opinion). In that case, like this one, defense counsel and the prosecutor engaged in "soft" negotiations to avoid having the prosecutor "spin his wheels" procuring approval "until [the] defendant's interest was known." *Id.* But according to the defendant, counsel's lack of advice about the soft offer caused the negotiations to end without a firm offer. *Id.*

14

When the defendant asserted an ineffective assistance of counsel claim, the prosecution defended on the ground that it had not made a firm offer, and, therefore, the defendant could not show prejudice. *Id.* at *5. The court disagreed, explaining that while "[i]t may be more difficult for a defendant to establish the necessary prejudice in the absence of a formal plea offer," because the defendant must show that the prosecution "would in fact have made a particular offer," the claim was not foreclosed by the lack of a formal offer. *Id.* at *6; *see also Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) (a defendant can establish prejudice in the absence of an offer by showing a reasonable probability "that the prosecutor would have actually offered him a deal had his attorney been competent"); *Barnes v. Warden of Green Haven Corr. Facility*, 416 F. Supp. 3d 152, 158 (E.D.N.Y. 2019) (holding that even absent a firm offer, the defendant established prejudice by showing that, but for counsel's errors, there was a "reasonable probability that further plea negotiations would have been pursued, that the People would have made a plea offer with a sentence of [ten] to [twelve] years, and that [the defendant] would have accepted it"); *Flood v. United States*, 345 F. Supp. 3d 599, 613 (D. Md. 2018) (explaining that where the

15

prejudice alleged is the denial of an opportunity to negotiate a plea agreement, the defendant must show "an additional reasonable probability that 'the government would have in fact made him a particular plea offer' in the first place" (citation omitted)); *United States v. Giamo*, 153 F. Supp. 3d 744, 761 (E.D. Pa. 2015) (to establish prejudice where a firm offer was not extended, the defendant must demonstrate a reasonable probability that "there would 'be a plea offer by the [g]overnment'" (citation omitted)), *aff'd*, 665 F. App'x 154 (3d Cir. 2016); *cf. United States v. Swaby*, 855 F.3d 233, 241 (4th Cir. 2017) (a defendant can establish prejudice in the plea context by showing that, but for counsel's errors, he would have negotiated a more favorable plea offer); *Savage v. State*, 511 P.3d 249, 257 (Idaho 2022) (same).

¶ 31    Here, the district court focused on whether the prosecution had extended a firm offer and, finding that it had not, reasoned that the lack of a firm offer, and not counsel's errors, precluded Evans from accepting a plea deal.  But Evans's claim encompasses an argument that, but for counsel's failure to properly advise him of the true consequences of accepting a twenty-seven-year offer, a firm offer would have materialized.  In light of the case law discussed

above, we conclude that the district court erred by focusing exclusively on the existence of a firm offer.

¶ 32 This error affected the court's analysis regarding the deficient performance prong too. Because the court determined that Evans's claim required proof of a firm offer, it reasoned that counsel did not have any duty to advise Evans about the "possible" offer. In other words, because only a firm offer has constitutional significance, counsel's performance during plea negotiations was constitutionally irrelevant until such time as a firm offer was extended.

¶ 33 That reasoning cannot be squared with well-settled law. The right to effective assistance of counsel extends to "the plea-bargaining process," *Lafler*, 566 U.S. at 162, including the negotiations leading to an offer, *see Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[W]e have long recognized that the *negotiation of a plea bargain* is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." (emphasis added)). Neither the Colorado appellate courts nor the Supreme Court has ever "cabined th[e] right [to effective assistance of counsel] to negotiations that take place only after an offer has been made." *Byrd*, 940 F.3d at 255. Viewing the entire plea bargaining

process as a critical stage makes sense because if soft offers generally precede firm offers, counsel's advice about the soft offer will often determine whether a firm offer is ultimately extended.

¶ 34    Accordingly, we conclude that the court applied the wrong legal standard with respect to both the deficient performance and prejudice prongs of the *Strickland* analysis.  The question, then, is whether, applying the correct legal standard, Evans's claim nonetheless fails as a matter of law.  If it does, we can affirm the district court's order on other grounds.  *See People v. Taylor*, 2018 COA 175, ¶ 8.

3.    Applying the Correct Legal Standard, Evans's Claim Does Not Fail as a Matter of Law and Therefore a Remand Is Required

¶ 35    On this record, we cannot say that, if analyzed under the proper legal standard, Evans's claim necessarily fails.

¶ 36    Turning first to deficient performance, the claim fails as a matter of law only if counsel never has an obligation to advise a defendant about parole eligibility.  That is the People's argument on appeal, but we think that argument goes too far.  Whether such an obligation exists depends on "the factual circumstances of the particular case," including whether parole eligibility advice was

18

required under the prevailing standards of minimally acceptable professional conduct at the relevant time, *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 19 (citation omitted), and whether counsel "ha[d] reason to believe" that the collateral issue of parole eligibility "[wa]s highly significant to [the] client's decision" to accept or reject an offer, *People v. Joslin*, 2018 COA 24, ¶ 11.

¶ 37     Some evidence presented at the Rule 35(c) hearing suggested that counsel had a duty to advise Evans about his parole eligibility. Evans's expert testified that when a young person is confronted with an offer of a sentence that amounts to "more [years] than [he has] lived," defense counsel has an "even . . . higher obligation" to explain parole eligibility, because the difference between the sentence imposed and the sentence likely to be served "is a huge influence on whether [the client] accept[s] the plea bargain."

¶ 38     Evans's testimony suggested that counsel knew or should have known that parole eligibility was an important factor in his decision to reject the "possible" offer. Evans explained that because he had no prior adult convictions, he misunderstood how much time he would serve under a twenty-seven-year offer — a misunderstanding that was communicated to counsel when he told

her that he could not accept the deal because he would be fifty years old upon his release from prison. And he said that, if he had known about parole eligibility, he would have accepted a twenty-seven-year offer "[a] million percent."

¶ 39 Because the district court determined that counsel had no duty to advise on a "possible" offer, it did not make any findings concerning the importance of parole eligibility in this case. And given the evidence, we cannot say how the district court would have resolved this prong of the *Strickland* test.

¶ 40 That brings us back to the prejudice prong. Applying the correct legal standard, the first question is whether the evidence could support a finding that, absent counsel's errors, there is a reasonable probability that the prosecution would have extended a firm offer. The district court could have made such a finding.

¶ 41 First, Evans's expert testified that "most soft offers become hard offers if the client comes back and says, 'Yeah, I'll take that.'" That testimony comports with common sense. If the prosecution floated a soft offer of twenty-seven years to make sure the parties were on the same page, and Evans expressed an interest in

accepting the offer, it seems likely that a firm offer would have been forthcoming.

¶ 42    Second, the same prosecutor extended a twenty-five-year offer to Lanctot, the shooter, in exchange for his plea to conspiracy to commit second degree murder.  (In fact, because the plea agreement required that the sentence run concurrent to a previously imposed sentence, as discussed *supra* ¶ 8 n.2, the twenty-five-year sentence was effectively a ten-year sentence.)  An offer to a codefendant can be strong evidence that the prosecution would have made a similar offer to the defendant.  *See, e.g.*, *Byrd*, 940 F.3d at 258; *see also United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (a defendant can show a reasonable probability that he could have negotiated a better plea offer by identifying cases where the prosecution extended more favorable offers to similarly situated defendants).

¶ 43    The next question is whether the evidence could support a finding that, if he had been competently advised, Evans would have accepted a twenty-seven-year offer.  The district court did not answer this question, and the People do not address it on appeal.  The issue is complicated by the fact that Evans asserted two claims

concerning counsel's performance that he said deprived him of the ability to properly evaluate the attractiveness of the soft offer — failure to inform him of parole eligibility and failure to advise him of his exposure under a complicity theory of liability. (At oral argument, the People acknowledged that these two claims "fold into each other.") The court granted a hearing only on the first claim but for reasons that we explain below, we conclude that Evans was entitled to a hearing on the complicity claim as well.

¶ 44     Even setting aside the complicity claim, the record contains some evidence corroborating Evans's testimony that, but for counsel's failure to correct his misunderstanding about parole eligibility, he would have accepted the offer. *See People v. Sifuentes*, 2017 COA 48M, ¶ 20 ("Some objective evidence must corroborate the defendant's testimony that he would have made a different decision about the plea if he had been properly advised.").

¶ 45     Disparities between the actual sentence the defendant faced and the sentence he could have received if his counsel had been effective "are an important factor in the reasonable-probability inquiry where a defendant claims he would have accepted a plea but for his counsel's error." *Baker v. United States*, 109 F.4th 187,

197 (3d Cir. 2024); *cf. People v. Carmichael*, 206 P.3d 800, 807 (Colo. 2009) (considering the disparity between the sentence exposure as represented by defense counsel and the actual exposure the defendant faced by going to trial). Here, the disparity was indisputably substantial: twenty-seven years (not accounting for parole eligibility) versus life in prison without the possibility of parole. Even considering just the disparity between the possible offer's sentence as represented by counsel — twenty-seven years — and the actual period of incarceration Evans said he would likely serve — about fifteen years — that forty-five percent difference provides some corroboration of Evans's testimony.

¶ 46 Moreover, Evans was "affirmatively pursuing a plea bargain," a circumstance that "lends credibility to [his] testimony that he was amenable to a plea bargain and would have accepted an offer, had he been properly counseled." *Carmichael*, 206 P.3d at 807. In fact, defense counsel's notes showed that Evans had made a counteroffer of fifteen years, which corroborates his testimony that he would have taken the twenty-seven-year offer if he had known that, as a practical matter, it could result in a sentence closer to fifteen years.

¶ 47    Finally, the expert testified that once an offer is accepted, it is rare for a prosecutor to withdraw it or for the court to reject it.

¶ 48    In sum, we conclude that the district court applied the wrong legal standard in denying Evans's parole eligibility claim. And because, on this record, the claim does not fail as a matter of law, we must remand the case to the district court for further proceedings. On remand, the court should determine whether, but for counsel's errors, there is a reasonable probability that (1) a firm and lawful offer[6] would have been extended; (2) Evans would have accepted the offer; (3) the offer would have been presented to and accepted by the court; and (4) Evans's sentence under the plea offer would have been less severe than the sentence that was imposed. *See Lafler*, 566 U.S. at 164.

---

[6] The district court found that the prosecution could not have offered a twenty-seven-year sentence in exchange for a guilty plea to felony murder because, at the time of Evans's trial, a felony murder conviction carried a mandatory sentence of life without parole. True, but we note that Lanctot pleaded guilty to conspiracy to commit second degree murder, a charge not included in the grand jury's indictment, and Evans recalled that the prosecution's soft offer was based on a plea to second degree murder.

## C.    Complicity Claim

### 1.    Rule 35(c) Proceedings

¶ 49    The jury was instructed on felony murder in accordance with section 18-3-102(1)(b), C.R.S. 2007, which provided that a person commits felony murder if, "[a]cting either alone or with one or more persons, he . . . commits or attempts to commit . . . burglary, . . . and, in the course of or in furtherance of th[at] crime . . . , or of immediate flight therefrom, the death of a person . . . is caused by anyone." Thus, if the defendant did not commit the predicate offense (in this case, burglary), he cannot be convicted of felony murder. *Doubleday v. People*, 2016 CO 3, ¶ 22.

¶ 50    The prosecution's theory was that Evans could be held accountable for the victim's murder because he was an accomplice *to the burglary*. Evans defended on the ground that he was not present at the scene of the burglary, so he could not be guilty of murder.

¶ 51    In his Rule 35(c) motion, Evans alleged that trial counsel provided ineffective assistance by failing to explain his potential exposure as an accomplice. He said that, as a result, he did not understand that he could be convicted of felony murder under a

25

complicity theory. That misunderstanding, along with his lack of information about parole eligibility, led him to reject the plea offer.

¶ 52 The district court denied this claim without a hearing. Focusing on one allegation in the motion, the court summarized Evans's averments as a claim that, "because of trial counsel's failure to explain complicity, [he] believed he could not be convicted of felony murder because he did not shoot the victim." Having framed the claim that way, the court reasoned that counsel's failure to explain complicity could not have prejudiced Evans because the indictment put Evans on notice that he could be found guilty of felony murder even if he did not shoot the victim. In other words, as the People explained at oral argument, the district court determined that Evans's specific allegation — that he was unaware he could be convicted of felony murder as a non-shooter — did not implicate complicity at all, because even without a complicity instruction, Evans could be convicted of felony murder as a principal despite not shooting the victim.

2. The Court Erred by Summarily Denying the Complicity Claim

¶ 53 We might agree with the district court's resolution of this claim if Evans's allegation about not being the shooter had been

26

presented in isolation. That is, if Evans had alleged only that, because he was not properly advised, he did not know he could be convicted of felony murder as a non-shooter, we might concur that the indictment (and incorporated statutory elements) sufficiently conveyed that information.

¶ 54 But in context, Evans's claim was not that he was unaware of his potential exposure *as a principal* under the felony murder statute. His claim was that the prosecution had secured a felony murder conviction *on a complicity theory* and his lawyer had never advised him of that possibility. According to Evans, the lawyer's failure to explain his exposure under that alternative theory of liability meant that he overestimated his chances at trial and, as a result, rejected the soft offer.

¶ 55 Evans's allegations are sufficient to warrant a hearing.

¶ 56 Defense counsel has a duty to accurately advise a client "regarding the attractiveness of the plea bargain in relation to the risks of going to trial." *Carmichael*, 206 P.3d at 806. That duty, in turn, effectuates the defendant's "right to make a reasonably informed decision whether to accept a plea offer." *Id.* (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). A lawyer who

27

fails to inform her client of the relevant law abdicates her duty under the Sixth Amendment and performs deficiently. *Lockhart*, 474 U.S. at 62 (White, J., concurring in the judgment).

¶ 57    In *People v. Hunt*, 2016 COA 93, ¶¶ 8, 31, a division of this court held that the defendant was entitled to a hearing on his claim that counsel had erroneously advised him that he could be found guilty of murder as a complicitor, resulting in his acceptance of a plea offer. The division concluded that because the facts as presented at the providency hearing would not have supported a conviction under a complicity theory, "any failure on the part of plea counsel to so advise [the] defendant could have constituted deficient performance." *Id.* at ¶ 31.

¶ 58    The People, adopting the district court's view, argue that *Hunt* is inapposite because, in that case, the defendant alleged that his counsel affirmatively misled him about his possible exposure as a complicitor, and here, Evans alleged that his lawyer failed to advise him about complicity at all. The *Hunt* division did not find that distinction relevant and neither do we. In ordering a remand, the *Hunt* division explained that a hearing was necessary to determine whether counsel had "misadvised" or "failed to properly advise" the

defendant about complicity, *id.* at ¶ 32 — either way, counsel's failure could support a finding of ineffective assistance of counsel.

¶ 59     This case is the inverse of *Hunt.* If Evans's lawyer should have properly advised him about complicity but failed to, and, as a result, Evans rejected a soft offer that could have developed into a firm offer, then he may be entitled to relief. *See Quintana v. Chandler*, 723 F.3d 849, 854 (7th Cir. 2013) (explaining that counsel's "representation would cause constitutional problems" if the defendant "rejected his plea on a misunderstanding that he would not be guilty because he was not the principal," but finding that counsel had properly advised the defendant on accomplice liability); *People v. McCauley*, 821 N.W.2d 569 (Mich. 2012) (mem.) (disagreeing with the court of appeals' remedy but affirming its conclusion that counsel provided ineffective assistance by failing to explain complicitor liability to the non-shooter defendant because, without the information, he could not make an informed decision whether to accept or reject the plea offer); *Wanatee v. Ault*, 39 F. Supp. 2d 1164, 1172-73 (N.D. Iowa 1999) (in light of the facts of the case, counsel's failure to advise the defendant about aiding and abetting liability constituted deficient performance).

¶ 60    And, for the reasons discussed above, we reject the People's argument that Evans cannot establish prejudice because no firm plea offer was extended.  Whether there is a reasonable probability that the soft offer would have become a firm offer must be determined on remand.

¶ 61    Accordingly, we conclude that Evans is entitled to an evidentiary hearing on his claim that counsel provided ineffective assistance by failing to advise him that he could be convicted under a complicity theory.

### III.   Disposition

¶ 62    The district court's orders are reversed and the case is remanded for further proceedings.

JUDGE GROVE and JUDGE PAWAR concur.